# United States Court of Appeals
## For the First Circuit

No. 13-1157

UNITED STATES OF AMERICA,

Appellee,

v.

DONALD J. JONES III, a/k/a Don Juan,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Torruella, Howard, and Thompson,
Circuit Judges.

Jonathan G. Mermin, with whom Preti, Flaherty, Beliveau & Pachios, LLP was on brief, for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Peter F. Neronha, United States Attorney, was on brief, for appellee.

April 30, 2014

**THOMPSON, <u>Circuit Judge</u>**.

**PREFACE**

In today's appeal — which seems like something straight out of <u>Dateline NBC</u>'s old "To Catch a Predator" series — Donald J. Jones III attacks his convictions and life sentences for federal crimes related to his efforts to have sex with a child. He must settle for a partial victory, however, as we affirm his convictions but vacate his life sentences. And because our vacating his life terms undoes a big part of the judge's sentencing schematic, a resentencing on the other counts is appropriate too.

**HOW THE CASE GOT HERE**

We start with the facts, viewed in the light most compatible with the guilty verdicts. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Kinsella</u>, 622 F.3d 75, 77 (1st Cir. 2010) (citing <u>United States</u> v. <u>Bunchan</u>, 580 F.3d 66, 67 (1st Cir. 2009)); <u>United States</u> v. <u>Mercado</u>, 412 F.3d 243, 245 (1st Cir. 2005).

**(a)**
**A Predator on the Prowl**

In 2011 Jones signed up for an account at motherless.com, an internet pornography site. Picking "donjuan045" as his screen name, Jones posted on his profile page a photo of a young girl holding a penis, with something that looked like semen on her face and hands.[1] "I am into young," read his message, "look[ing] for

_____

[1] We apologize for the graphic details in this opinion.

-2-

<u>white</u> mothers and fathers who have young and would like to see their daughters get parted by a normal to moderate sized <u>black</u> pole." (Emphasis in original.) "Wanting a real meeting," he added.

A couple days later a postal inspector named Jay Stern spotted Jones's postings. Posing as "Jim Stuart," Stern chatted with Jones online via motherless.com's messaging system. "Hi, friend," Stern wrote. "I've got a daughter. Maybe we can work something out." "Where are you from and how old?" Jones wrote back. "Rhode Island," Stern responded, adding that his "daughter" was "eight, almost nine." We put "daughter" in quotes this last time because she is fictitious, though Jones did not know this then. Would "I get a chance to touch her or just look at her?" Jones wanted to know. "I would be so gentle and kind to her," he promised, "and would come bearing gifts." Continuing with this theme, he wrote a bit later that he was "a lover of all girls little. Don't want to hurt. Want to love." He suggested that they all meet at a "[h]otel up your way," preferably "around the end of school or maybe before so you can go on summer vacation and I will have loved her by then." And he eventually gave Stern his email address and cellphone number.

Stern was not the only person Jones chatted with online at motherless.com, by the way. For example, having joined the site's forum called "Very Cute Only," Jones was asked, "what is the

youngest you will fuck??"[2]  He wrote, "i wont go below 5 not definite but a fairbase line."

Over the next two weeks, Jones and Stern emailed and called each other a lot.  During their conversations Jones bragged about his prior sexual contact with very young girls (one as young as four).  He also bragged about his cache of child pornography, describing some of what he had as "absolutely mouth watering."  And he emailed some child-pornography videos to Stern too.

After much discussion, the men settled on a plan.  Jones would travel by bus from Pennsylvania to Rhode Island.  Rendezvousing with Stern and his daughter, the trio would then check into a hotel, where Jones would perform sex acts on the girl over the course of several days.  Stern would watch and perhaps film what Jones did — "close up" shots only, the men agreed, "[n]o face" shots.

With the date for their get-together fast approaching, Jones asked for and got a chance to talk to Stern's daughter (played by another officer) over the phone.  "I sent you something" and "[y]ou should have it really, really soon," Jones told her. What he was referring to was some clothing he had sent her, gifts intended to make her feel comfortable around him, apparently.  He also promised Stern that he would bring "something sexy for her to

_____

    [2] As an "fyi," we reproduce communications as written, typos and all — having given this heads-up, we will not weigh the opinion down with "sics."

wear" when he came up.  And he emailed Stern some child-pornography videos for her to watch, presumably to make her think that what they were about to do was totally normal.  One video in particular would do the trick, he said, and he gushed at the possibility of reenacting a scene or two with her.  On top of all that, he sent Stern a poem that he had penned for her.  It read:

> Roses are red
> and candy is sweet
> I can't wait to get there
> To tickle you little feet
>
> To give you a hug
> And share time with you
> To see a smile on your face
> There's nothing I wouldn't do
>
> The symbol of Peace
> Is what brings us together
> But it's the love that we share
> That keeps us forever
>
> And knowing that in time
> So much we will share
> And if you ever need me
> Call me and I'll be there.

### (b)
### Arrest and Indictment

When Jones later boarded a bus bound for Rhode Island, little did he know what lay in store.  An undercover agent hopped on in New York and sat directly behind him.  Jones was in a good mood, the agent later said.  "Very, very talkative."  The agent, for example, overheard Jones's side of a phone conversation with someone (presumably Stern) discussing how he had the "evening wear."  As the bus neared Providence, it drove by the hotel where

-5-

Jones had booked a room for his meet-up with Stern and Stern's daughter. The agent then heard Jones ask the driver to pull over so he could get off. But the driver kept on driving.

Agents arrested Jones the second he got off the bus in Providence. Searches of Jones and his backpack turned up (among other things) a sheer child-size nightgown and panties, a get-up looking like something right off the racks of Frederick's of Hollywood; a USB thumb drive containing child pornography; and a smartphone containing Stern's number and email address (saved under the name "Jim"), plus more child pornography. Twelve child-pornography files on Jones's thumb drive and another on his smartphone matched ones that he had sent to Stern. Damning evidence, for sure.

After officers advised him of his <u>Miranda</u> rights[3] and obtained his waiver, Jones gave a lengthy statement.[4] Trying to explain what brought him to Rhode Island, Jones said that Stern — a man he did not know — had "hit me up on my email." "He's talking about having sex with his kid," Jones stressed, and "I wanted to see what he was really about." Jones did concede that Stern had talked "about possibly me having sex with his daughter." But Jones wanted no part of that, and after completing his factfinding

---

[3] <u>See</u> <u>Miranda</u> v. <u>Arizona</u>, 384 U.S. 436 (1966).

[4] The judge admitted a recording and transcript of the interview into evidence without objection.

-6-

mission, all he planned on doing was a little sightseeing around Providence — or so he said. Critically, Jones admitted that he had (a) opened the motherless.com account, posting the photo of the young girl (no older than "10, 11," he said) holding a penis, with ejaculate on her face and hands; (b) started communicating with Stern through motherless.com; (c) "probably" posted the message about his willingness to have sex with girls five and up; (d) gotten child pornography "left and right" from a guy named "Eduardo"; (e) emailed Stern more than 10 child-pornography videos; (f) booked the hotel room; (g) mailed Stern clothes for his daughter; and (h) downloaded child pornography to the thumb drive that he had on him — "stuff" to show Stern's "kid," he conceded. As for the other motherless.com posting — "look[ing] for <u>white</u> mothers and fathers who have young and would like to see their daughters get parted by a normal to moderate sized <u>black</u> pole" — Jones suggested that someone else "could have put that there."

Soon a grand jury indicted Jones, charging him with crossing a state line with intent to engage in a sex act with a person under the age of 12 (count 1);[5] using the internet — a facility of interstate commerce — to persuade a person under 18 to engage in a sex act for which he could be charged with the criminal offense of child molestation under Rhode Island law (count 2);[6]

---

[5] <u>See</u> 18 U.S.C. § 2241(c).

[6] <u>See</u> 18 U.S.C. § 2422(b).

-7-

traveling in interstate commerce to engage in a sex act with a minor (count 3);[7] transporting child pornography in interstate commerce (count 4);[8] possessing child pornography distributed through interstate commerce (count 5);[9] and committing the crimes alleged in counts 1-3 while being required to register as a sex offender (count 6).[10]  Jones pleaded not guilty and proceeded to trial.

### (c)
### Conviction and Sentence

The parties dueled below over the admissibility of a certified document showing Jones's 1993 New Jersey conviction for aggravated sexual assault and endangering the welfare of a child. The judge had earlier granted the government's in limine motion to introduce that document, finding the evidence relevant, not unfairly prejudicial, and admissible under Fed. R. Evid. 414 (titled "Similar Crimes in Child-Molestation Cases").[11]  And the judge stood by his decision at trial.  A New Jersey probation officer then testified that the victim there was nine years old and

---

[7] See 18 U.S.C. § 2423(b).

[8] See 18 U.S.C. § 2252(a)(1).

[9] See 18 U.S.C. § 2252(a)(4)(B).

[10] See 18 U.S.C. § 2260A.

[11] Broadly speaking, Rule 414 makes evidence of the defendant's previous child-molestation crimes potentially admissible, even if the evidence's only relevance is to his propensity to commit child molestation.  More on this in a bit.

that Jones still had to register as a sex offender in 2011. Confronted with this and the other evidence against him, Jones tried to fight back during his lawyer's closing (he presented no evidence and never moved for a judgment of acquittal). Anyone truly intending to have sex with a child would have acted more slyly, his lawyer told the jury — "you don't" give out your "phone number," for example. Jones "was a registered sex offender," his lawyer added. "Do you think he is going to leave a trail that goes to his front door," like the prosecution "says he did?" No one "is that dumb," defense counsel insisted. And as for the trip to Rhode Island, all Jones wanted was "to find out what's going on." The jury bought none of defense counsel's theories, however, and convicted Jones on all counts.

Some months later the judge sentenced Jones to life plus 10 years in prison. This is how he got there: he imposed life terms on counts 1-2, a 30-year term on count 3, a 40-year term on count 4, a 20-year term on count 5, and a 10-year term on count 6 — with the sentences on counts 1-5 running concurrently with each other, and the sentence on count 6 running consecutively with the sentences on counts 1-3.

Having set the stage, we now tackle the issues presented on appeal, adding further details as needed.

**ISSUES AND RULINGS**

Unhappy with the outcome below, Jones contests the admissibility of the prior-conviction evidence, the validity of the count-6 conviction under § 2260A, and the legality of the life sentences. The government puts up a strong fight on the first two fronts. But it basically stands shoulder-to-shoulder with Jones on the sentencing issue, agreeing that we must toss the life terms. And if we do that, the government adds, then we should let the judge "reassess" the sentences on the other counts — a suggestion that Jones seconds.

### (a)
### The Prior-Conviction Evidence

Jones thinks that the judge stumbled in admitting evidence of the 1993 New Jersey conviction. His thesis has two facets: first, that Rule 414 requires an actual child victim — and, he reminds us, there was none here; and second, that the evidence was irrelevant for counts 4-5 and unfairly prejudiced his defense of counts 1-3, see Fed. R. Evid. 401, 402, and 403. Because he débuts his actual-child-victim claim on appeal, we review it only for plain error — a very stiff standard that requires him to show "error, plainness, prejudice to [him] and the threat of a miscarriage of justice." United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011); see also United States v. Acosta-Colon, 741 F.3d 179, 192 (1st Cir. 2013); United States v. Batchu, 724 F.3d 1, 7 n.4 (1st Cir. 2013). He did, however,

-10-

raise the irrelevance and unfair-prejudice claims below, so we review this part of his thesis for abuse of discretion, see United States v. Polanco, 634 F.3d 39, 44 (1st Cir. 2011) — which means we can reverse only "if no reasonable person could agree with the judge's ruling," United States v. Maldonado, 708 F.3d 38, 42 (1st Cir. 2013). Ultimately, though, his theory is not a winning one, for reasons we now explain.

## (1)
### A Quick Evidence Primer

Evidence is admissible only if relevant, probative, and not unfairly prejudicial. See Fed. R. Evid. 401, 402, 403. We oversimplify slightly, but the basics are there. Moving on, we note that when the evidence is evidence of a defendant's other crimes, it is typically inadmissible to show his propensity for crime. See Fed. R. Evid. 404(b). We say "typically" because Rule 414 — like its comrades-in-arms, Rule 413 ("Similar Crimes in Sexual-Assault Cases") and Rule 415 ("Similar Acts in Civil Cases Involving Sexual Assault or Child Molestation") — overrides the ban on propensity inferences in a specific situation. See Martínez v. Cui, 608 F.3d 54, 59 (1st Cir. 2010). "In a criminal case in which a defendant is accused of child molestation," Rule 414 says, "the court may admit evidence that the defendant committed any other child molestation." Fed. R. Evid. 414(a). Importantly, this "evidence may be considered on any matter to which it is relevant." Id. A "child" is anyone under 14, the Rule adds. Fed. R. Evid.

-11-

414(d)(1).  And "child molestation" includes a kaleidoscopic array of acts constituting crimes under a variety of federal and state statutes — e.g., "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child" and "any conduct prohibited under 18 U.S.C. chapter 110" — as well as attempt or conspiracy to commit those crimes.  Fed. R. Evid. 414(d)(2).

(2)
Actual Child Victim

As for whether Rule 414 requires an actual child victim, Jones does not cite — and we cannot find — any case, anywhere, addressing the issue, let alone deciding it in his favor.  Given this state of affairs, we are worlds away from a plain error — i.e., an error that is indisputable.  See United States v. Marcus, 560 U.S. 258, 262 (2010); see also Cheshire Med. Center v. W.R. Grace & Co., 49 F.3d 26, 31 (1st Cir. 1995) (finding no plain error where (among other things) "no decision cited to us, and none of which we are aware," showed the obviousness of the supposed error).

Things might be different if Rule 414's language clearly supported Jones's position.  See United States v. Caraballo-Rodriquez, 480 F.3d 62, 70 (1st Cir. 2007).  Unfortunately for him, it does not.

Pouncing on the Rule's opening clause — "In a criminal case in which a defendant is accused of child molestation" — Jones argues that "child" there must mean a real child.  Ditto for the word "child" in the section saying that child molestation includes

acts criminalized by "chapter 109A" of title 18 "and committed with a child."  Surely "child" there must mean an actual child too, he insists.  The government responds with a number of reasons why that is just not so.  Its big one is that Rule 414 only requires an attempt or conspiracy, which, it adds, undermines any notion that the Rule demands a completed crime with a real-life child victim. We need not take sides, however.  At best for Jones, there is a reasonable dispute about what the fought-over phrases mean — and that devastates his position, because (as we said a second ago) an error open to reasonable dispute is not plain error.  <u>See</u>, <u>e.g.</u>, <u>Marcus</u>, 560 U.S. at 262.

Just to be clear:  We are not saying that the judge's Rule 414 edict is error.  Nor are we saying that it is not error. All we are saying is that <u>if</u> there was error, it is <u>not</u> "plain."

(3)
<u>Relevance and Unfair Prejudice</u>

We can make quick work of Jones's claim that the judge should not have admitted the prior-conviction evidence because (to his mind, at least) it "was irrelevant" to counts 4-5 (the ones dealing with the transportation and distribution of child pornography).  Essentially, and helpfully, he concedes the evidence's relevance to counts 1-3 and 6.  That means game, set, and match to the government on this issue, for we know of no case — and Jones cites none — suggesting that evidence must be relevant to <u>all</u> counts.  <u>See generally</u> <u>United States</u> v. <u>Morris</u>, 532 F.2d

-13-

436, 444 (5th Cir. 1976) (stressing that the court was "aware of no rule of law declaring that in order to be admissible on one count of an indictment, evidence must be relevant on all counts"). All things considered, we cannot say that the judge abused his discretion on the relevance question.

We turn, then, to the unfair-prejudice issue. Rule 403 (for those not in the know) lets a judge exclude relevant evidence if "its probative value is substantially outweighed" by its unfairly prejudicial nature. Unfairly prejudicial means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note.

Jones complains first that evidence of his New Jersey conviction merely encouraged the jury to infer that he had a propensity to act like a "child molester," something that he believes is at odds with Rules 404(b) and 403. Not true. Yes, evidence offered under Rule 414 must still pass muster under Rule 403. See Martínez, 608 F.3d at 60-61. But when tackling the problem, judges must be ever mindful that Rule 414 removes Rule 404(b)'s blanket ban on propensity inferences in child-molestation cases. See id. at 60.[12] And because Rule 414 flags this propensity

---

[12] Martínez is a Rule 415 case. Id. But what we said there applies here. See id. at 59 (explaining that Congress's "purpose" in drafting Rules 413, 414, and 415 "was to supersede Rule 404(b)'s prohibition on evidence of like conduct showing propensity in sexual assault cases").

inference as proper, we cannot brand the inference as <u>unfairly</u> prejudicial under Rule 403.  <u>See</u> <u>United States</u> v. <u>Rogers</u>, 587 F.3d 816, 822 (7th Cir. 2009) (quoted favorably in <u>Martínez</u>).

Readers take note, please.  Even if no unfair prejudice arises solely because the evidence rests on propensity, that hardly means that there are no dangers to watch out for.  <u>See</u> <u>id.</u>  The evidence could still cause the jury to condemn a defendant based on passion or bias, for example, which is a no-no.  <u>See</u>, <u>e.g.</u>, <u>Old Chief</u> v. <u>United States</u>, 519 U.S. 172, 180 (1997).  Think of a jury that uses that evidence to convict because it is disgusted by the defendant's criminal past rather than convinced that he did the crime charged.  <u>See</u> <u>id.</u>  Or think of a jury that — unsure of guilt — convicts anyway because it believes the other-crimes evidence shows the defendant is an evildoer who must be locked up.[13]  <u>See</u> <u>id.</u> Jones makes a passing attempt to raise the specter of passion or prejudice, noting in a case parenthetical tucked in his brief that neither of these emotions is a proper basis for conviction.  But after telling jurors that they could draw a propensity inference (whether to do so was up to them), the judge stressed that the government "has the burden of proving that [Jones] committed each of the elements of the offense" involved in the current "indictment."  And he reminded them that Jones was "not on trial

---

[13] It goes without saying — but we say it anyway — that our list is illustrative rather than exhaustive.

for any act, conduct, or offense that was not charged in the indictment." Jones says not a word about this, never explaining why the judge's comments were not enough to neutralize any risk of unfair prejudice, for example. As things stand, then, Jones's passion or bias surmise is a no-go. See generally United States v. Mehanna, 735 F.3d 32, 64 (1st Cir. 2013) (finding no reason to think "that the verdict was the result of passion or prejudice," given how the judge (among other things) "gave the jury suitably prophylactic instructions").

The bottom line is that we see no abuse of discretion in the judge's handling of this aspect of the case. And so we press on.

**(b)**
**The § 2260A Conviction**

Jones grouses that his count-6 conviction (committing a particular felony crime involving a minor while required to register as a sex offender) cannot stand because, he says, the statute of conviction — 18 U.S.C. § 2260A — demands an actual child victim. He never raised this theory below in any context, like in a motion alleging a defective indictment, see Fed. R. Crim. P. 12(b)(3)(B), or in a motion claiming insufficient trial evidence, see Fed. R. Crim. P. 29. And we cannot tell what the basis is for his challenge here. If it is a defective indictment — and assuming for argument's sake that this type of attack remains open — he must show plain error to get anywhere. See, e.g., United States v.

-16-

<u>Troy</u>, 618 F.3d 27, 34 (1st Cir. 2010). But if instead it is insufficient evidence, he must vault over the "clear and gross injustice" hurdle too. <u>See</u>, <u>e.g.</u>, <u>Acosta-Colon</u>, 741 F.3d at 192-93 (explaining that "the already high bar for plain error becomes even higher when dealing with an unpreserved sufficiency-of-the-evidence" challenge, "requiring a criminal defendant to show a clear and gross injustice for reversal" (internal quotations omitted)). He has made neither showing, however.

Reduced to its essentials, § 2260A makes it a felony for a person required to register as a sex offender to commit certain sex crimes "involving a minor," including crimes under §§ 2241, 2422, and 2423 — remember, the jury convicted Jones of violating §§ 2241(c), 2422(b), and 2423(b).[14] Jones reads "involving a minor" to mean involving a <u>real</u> minor. We have not spoken on the issue. But the Eleventh Circuit has, the government is quick to point out,

---

[14] Section 2260A provides:
Whoever, being required by Federal or other law to register as a sex offender, commits a felony offense involving a minor under section 1201, 1466A, 1470, 1591, 2241, 2242, 2243, 2244, 2245, 2251, 2251A, 2260, 2421, 2422, 2423, or 2425, shall be sentenced to a term of imprisonment of 10 years in addition to the imprisonment imposed for the offense under that provision. The sentence imposed under this section shall be consecutive to any sentence imposed for the offense under that provision.
Section 2260A is part of chapter 110, which defines "minor" as anyone under 18. <u>See</u> 18 U.S.C. § 2256(1).

citing United States v. Slaughter, 708 F.3d 1208, 1214-16 (11th Cir. 2013).[15]

Relying on its circuit's law, Slaughter noted that a § 2422(b) conviction for attempted enticement does not require an actual child victim. See 708 F.3d at 1215 (discussing United States v. Root, 296 F.3d 1222, 1227-28 (11th Cir. 2002)). And so, Slaughter added, a § 2260A conviction does not require an actual child victim either, at least when that conviction is based on a § 2422 violation. See 708 F.3d at 1215. Slaughter drew comfort from the fact that chapter 110 uses the phrase "actual minor" three times, in 18 U.S.C. §§ 2252A(a)(3)(B)(ii), (c)(2), and (e), but not in § 2260A — showing, Slaughter said, that Congress knows how to add the "actual minor" language when it wants to. See 708 F.3d at 1215-16. Slaughter also emphasized how its conclusion jibed with the purpose behind these laws, which is to protect children from sex predators. Id. at 1216. Surely Congress could not have intended to let repeat sex offenders off simply because they "enticed somebody [they] believed to be a child, rather than an actual child," Slaughter concluded. Id.

Turning back to our case, we point out the judge's jury charge — unobjected-to below and unchallenged here — said a couple

_____

[15] Slaughter came down after Jones's trial. But we determine an error's plainness by considering the law as it exists on appeal. Henderson v. United States, 133 S. Ct. 1121, 1124-25, 1127-29 (2013).

of important things:  first, that none of the predicate offenses —

§§ 2241(c), 2422(b), and 2423(b) — "require[s] that an actual child

exists"; and second, that the jury had to find beyond a reasonable

doubt that Jones committed at least one of these crimes while

required to register as a sex offender.  Whether right or wrong

(and we express no opinion, one way or the other), these

instructions are the law for our case because they are not

"patently incorrect," given decisions from other circuits (we have

not ruled on the actual-child issue).[16]  See, e.g., United States

v. D'Amico, 496 F.3d 95, 102 n.6 (1st Cir. 2007), vacated on other

grounds, 552 U.S. 1173 (2008).  And when combined with Slaughter's

holding that § 2260A does not require an actual victim if the

predicate crime does not (the only on-point holding from any

court), Jones cannot show either a "plain" error, see Batchu, 724

F.3d at 9-10, or a "clear and gross" injustice, see Acosta-Colon,

741 F.3d at 193 (describing how hard it is to meet that "souped-up

standard").

          Desperate for a way around the problem, Jones spends a

lot of time arguing that Slaughter is irrelevant, for example

because that case involved an attempted-enticement conviction under

§ 2422(b) while his does not.  At best, Jones has done no more than

_____

        [16] See, e.g., United States v. Farley, 607 F.3d 1294, 1324-25
(11th Cir. 2010); United States v. Spurlock, 495 F.3d 1011, 1013-14
(8th Cir. 2007); United States v. Tykarsky, 446 F.3d 458, 464-69
(3d Cir. 2006).  Whether these decisions are correct, we need not
and do not say today.

raise the possibility of a reasonable dispute about what § 2260A requires — which gets him nowhere, because (at the risk of sounding like an iPod stuck on repeat) an error subject to reasonable dispute is not plain error. See, e.g., Marcus, 560 U.S. at 262. Still hoping against hope, Jones also suggests that two of his three § 2260A predicate convictions — specifically, his convictions under §§ 2422 and 2423 — constitute a double-jeopardy violation. But he discusses the issue only in his reply brief and so has waived the argument. See, e.g., United States v. Hall, 557 F.3d 15, 20 n.3 (1st Cir. 2009).

To summarize succinctly, because Jones's preferred approach to the actual-child issue is far from obvious, the judge did not plainly err in not taking it up on his own. Obviously nothing said here whispers even the faintest hint of how we might someday rule on the merits of the actual-child question. See Caraballo-Rodriguez, 480 F.3d at 70 (explaining that our no-plain-error holding did not constitute a "ruling on the merits" concerning how to read the statute in play).

Two sets of arguments down, two to go.

### (c)
### The Life Sentences

Jones says that we must vacate his life sentences on counts 1 and 2, offering a bunch of reasons. Commendably, the government agrees, though for slightly different reasons. We think the government's analysis is spot-on.

-20-

We start with count 1, which, the reader will recall, charged Jones with violating § 2241(c) by crossing state lines "to engage in a sexual act" with a person under 12. "Sexual act" means (among other things) "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(C). And § 2241(c) — so far as relevant here — requires (emphasis ours) a life sentence "[i]f the defendant has previously been convicted of another Federal offense under this subsection, or a State offense that would have been an offense under either such provision had the offense occurred in a Federal prison." The judge at sentencing concluded that Jones's 1993 New Jersey conviction qualified as a predicate offense under § 2241(c). Looking at the state-court judgment and the statute of conviction — not at what Jones did to trigger the statute's application, see Descamps v. United States, 133 S. Ct. 2276, 2285-86 (2013) — we respectfully disagree.

The state-court judgment shows that a jury convicted Jones on a two-count indictment for aggravated sexual assault and endangering the welfare of a child. See N.J. Stat. Ann. §§ 2C14-2a(1) and 2C24-4a. The state-court judgment also says that the latter count "merge[d]" into the former. So we — like the parties — zero in on § 2C14-2a(1).

Section 2C14-2a(1) provides that a person "is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person" and "[t]he victim is less than 13 years old." One reason that section cannot qualify as a § 2241(c) predicate — and one is all we need — is that unlike § 2241(c), § 2C14-2a(1) does not require proof that the defendant acted with the intent to degrade, humiliate, arouse, etc. See In re T.T., 907 A.2d 416, 424 (N.J. 2006) (explaining how § 2C14-2a(1) lacks that intent element). Enough said on that.

Now on to count 2, which, the reader will remember, charged Jones with infracting § 2422(b) by using the internet to entice a minor to engage in criminal sexual activity. Unlike § 2241(c), § 2422(b) does not have a built-in life-in-prison proviso. But another statute — 18 U.S.C. § 3559(e) — does. And the judge relied on that statute in imposing the life sentence on count 2.

Section 3559(e)(1) pertinently provides that "[a] person who is convicted of a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim." Section 3559(e)(2)(A) lists nine crimes that qualify as federal sex offenses, including § 2241(c) — the only one that matters here. Also, § 3559(e)(2)(B) and (C) say (among other things) that a "prior sex conviction" includes a "State sex offense," which is an

-22-

offense that "consists of conduct that would [constitute] a Federal sex offense."  And so we are left with the question whether Jones's state conduct would constitute a crime under § 2241(c) — a question we have already answered "no," given how § 2C14-2a(1) and § 2241(c) do not share the same intent element.  Ultimately, then, § 3559(e)(1) cannot be the basis for the life sentence.

One final matter, and we are done.

### (d)
### The Sentences on the Other Counts

The government says that if we vacate the life sentences, then the judge should get to "reassess" the sentences on the remaining counts as well, presumably because it believes that our vacating the life terms will disrupt the sentencing structure imposed below.  See generally United States v. Francois, 715 F.3d 21, 33-34 (1st Cir. 2013) (concluding that our vacating sentences on certain counts affected the judge's "sentencing architecture," requiring a complete resentencing on all counts).  Jones agrees. That suggestion makes sense, but only for counts 1-5 — after all, § 2260A (the statute underlying his conviction on count 6) obliges the judge to apply a 10-year mandatory sentence, to run consecutively with any sentences imposed for certain specified offenses.  Consequently, we vacate the sentence on counts 1-5 and remand for resentencing on those counts.  See id.  Naturally, we take no position on what the resentencing outcome should be.

-23-

**FINAL WORDS**

The short of this longish opinion is that we <u>affirm</u> Jones's convictions but <u>vacate</u> his sentences on counts 1-5 and remand for a resentencing consistent with this decision.

<u>So Ordered</u>.