**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0414n.06

No. 16-1740

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 17, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| FONTRISE CHARLES, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: GUY, CLAY, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Fontrise Charles, a former tax preparer, was convicted of making false claims against the Government in violation of 18 U.S.C. §§ 2 & 287 and filing false income-tax returns in violation of 26 U.S.C. § 7206(1), and was sentenced to 60 months' imprisonment. On appeal, Charles challenges her convictions and sentence, arguing that the district court (1) violated her rights to a jury trial and to due process by sentencing her based on facts established by only a preponderance of the evidence, and (2) erred in admitting evidence under Rule 404(b) that lacked sufficient factual foundation. We **AFFIRM**.

**I**

Charles operated a tax-preparation business known as "#1 Tax Lady" in Kalamazoo, Michigan. For the 2009 through 2013 tax years, she filed nearly 1,000 electronic returns on behalf of clients, claiming nearly $4,000,000 in tax refunds. A substantial share of these returns reported inflated incomes; according to the Government, the inflated numbers were intended to obtain the maximum possible earned-income tax credit (EITC) (a refundable tax credit available

to low-income workers). A portion of each refund was electronically deposited into a bank account controlled by Charles as a fee for her services.

The Internal Revenue Service (IRS) began investigating Charles after a bank reported a suspicious refund check associated with a return she had filed. The investigation focused on tax returns that were filed from IP addresses associated with Charles where refunds were partly deposited into Charles-controlled bank accounts. That review revealed that 928 of the 967 returns Charles filed for tax years 2009 through 2013 claimed the EITC. Of those 967 returns, 865 included an IRS Schedule C, a form used by self-employed individuals and small-business owners to report earnings. Nearly 40% of the Schedule C returns listed the taxpayer's occupation as "dancer." An unknown number of the remaining Schedule C returns listed other cash businesses, such as hair braider or babysitter, that would produce little in the way of income-verifying documentation.

During its investigation, the IRS interviewed a number of Charles's clients, who provided information supporting Charles's culpability. According to these clients, Charles asked them for their names, social-security numbers, information about their dependents and, if they had been employed during the tax year, a copy of their IRS Forms W-2.

The IRS investigation also revealed that Charles failed to report income from her tax-preparation business on her personal tax returns for the 2010 and 2011 tax years, and claimed a child as a dependent on her 2010 tax return who was not her own and who was born and died on the same day in 2008.

In March 2015, a grand jury indicted Charles on twenty-five counts of making false claims against the Government, related to twenty-five returns she filed on behalf of ten separate

clients. She was also indicted on two counts of filing false tax returns in connection with her personal returns for the 2010 and 2011 tax years.

Before trial, the Government sought to introduce a chart, Exhibit 116a, as 404(b) evidence summarizing information regarding the 967 returns filed by Charles for tax years 2009 through 2013. *See* Fed. R. Evid. 404(b)(1). The summary information included the percentage of returns (1) claiming the EITC, (2) attaching a Schedule C, and (3) listing the taxpayer's occupation as "dancer." The chart also stated that Charles received a total of $748,312 from client refunds (as tax-preparation fees) from the 2009 through 2013 tax years. Charles objected to the admission of the chart as improper evidence of other bad acts because it implied that in addition to the twenty-five allegedly false client returns she was charged with filing, Charles also filed hundreds of *other* false client returns. Charles argued that the chart lacked sufficient factual foundation showing that these other returns were false. The Government responded that the chart was offered for proper purposes under Rule 404(b)—to show intent, motive, and absence of mistake.

At the final pretrial hearing, the district court explained that it was satisfied with the chart's factual foundation and held that it was proper 404(b) evidence of intent and absence of mistake:

> I'm satisfied that the summary [Exhibit 116a] is based on data from the IRS. Obviously, Counsel can inquire vigorously concerning the matters that she is raising here, but for purposes of the foundation for the exhibit, I think that 116a, which is based on IRS data, would be—would be and is admissible under 1006 as a summary of the information concerning those returns for the tax years '09 through '13 with a deposit to the defendant's account. The information is relevant at the very least as it relates to the income stream of the defendant for purposes of accounts related to false tax returns of herself, but the Court would also find that it's appropriate 404(b) evidence for purposes of intent or the absence

> of mistake which the defendant has clearly indicated may be at issue during the course of trial.

Final Pretrial Hrg. Tr., R. 109, PID 1373.

At trial, the Government presented significant evidence of Charles's guilt, including by calling each of the ten taxpayers associated with the twenty-five tax returns that formed the bases of Counts 1 through 25. The taxpayers each testified that Charles prepared their returns, that the incomes listed on the returns were false, and that they did not give Charles the false information. For example, Bettina Emory's 2013 tax return reported $20,571 in earnings from hair braiding. Emory testified that she reported to Charles that she earned between $100 and $500 as a hair braider that year; she never told Charles that she earned the amount reported on her return, and she did not personally file the return.

Nine other clients provided similar testimony. Six testified that their tax returns falsely reported income from dancing. The three others testified that although their returns correctly stated that they earned income from housekeeping, dancing, or providing childcare, the income amounts reported were substantially higher than the true figures, and they had not provided those higher amounts to Charles. One client testified that Charles recommended that she falsely report dancing income in order to claim a larger refund; when the client protested that she might be audited, Charles remarked that a dance club was near the client's home.

During the testimony of an IRS agent, the Government introduced Exhibit 116a, which presented summary data representing the tax returns Charles had prepared for tax years 2009 through 2013. The district court overruled Charles's renewed objection to the exhibit. The jury convicted Charles of each count, and the district court sentenced her to 60 months' imprisonment.

**II**

**A**

Charles first challenges the 16-point enhancement she received under the Sentencing Guidelines that resulted from the district court's $3,211,864.90 loss-amount calculation. *See* U.S.S.G. § 2B1.1(b)(1)(I). She argues that her constitutional rights to a jury trial and to due process required that the loss amount be found beyond a reasonable doubt or by clear and convincing evidence, and the district court erred by applying a preponderance standard.

Charles failed to raise her constitutional challenges before or at her sentencing hearing. Accordingly, we review this issue for plain error. Fed. R. Crim. P. 51(b), 52(b). A plain error is an error that is obvious or clear; that affected the defendant's substantial rights; and that affected the fairness, integrity, or public reputation of the judicial proceeding. *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010).

As her only argument on this issue, Charles cites *United States v. Staten*, 466 F.3d 708 (9th Cir. 2006), for the proposition that due process requires that Guidelines enhancements be supported by clear and convincing evidence, especially for "significant sentencing enhancements." Appellant's Br. at 9. As she acknowledges on appeal, however, we have repeatedly held that district courts may find facts supporting a sentencing enhancement by a preponderance of the evidence, unless those facts increase the offense conduct's mandatory minimum sentence. *See, e.g.*, *United States v. Brika*, 487 F.3d 450, 462 (6th Cir. 2007) ("[W]e reaffirm our earlier holding that due process does not require sentencing courts to employ a standard higher than preponderance-of-the-evidence, even in cases dealing with large enhancements . . . ."); *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006) (concluding that "judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard

post-*Booker* does not violate either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury"). Accordingly, the district court's loss calculation needed only to be supported by a preponderance of the evidence.[1]

**B**

Charles next assigns error to the district court's decision to admit Exhibit 116a, arguing that the exhibit prejudicially implied, without sufficient foundation, that she filed hundreds of false tax returns beyond the returns charged in Counts 1 through 25. As a general matter, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence may be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2).

Because any error in admitting Exhibit 116a as Rule 404(b) evidence was harmless, we will assume, arguendo, that the district court erred in admitting the exhibit. *See* Fed. R. Crim. P. 52(a) (an "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). An error is harmless "unless it is more probable than not that the error materially affected the verdict." *United States v. Clay*, 667 F.3d 689, 700 (6th Cir. 2012) (quoting *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008)). "Stated another way, admission of other-act evidence constitutes harmless error 'if the record evidence of guilt is overwhelming, eliminating any fair assurance that the conviction was substantially swayed by the error.'" *Mack*, 729 F.3d 594, 603 (6th Cir. 2013) (quoting *Clay*, 667 F.3d at 700).

---

[1] Charles does not argue on appeal that the district court's loss calculation was unsupported by a preponderance of the evidence, and so we do not address that question.

Here, even assuming that Exhibit 116a improperly led the jury to believe that Charles had filed not just twenty-five, but hundreds, of false returns, the jury nevertheless heard overwhelming evidence apart from the chart that the returns charged in Counts 1 through 25 were false. Because the evidence was overwhelming, it is highly unlikely that Exhibit 116a affected the jury's verdict. The evidence included the testimony of the ten taxpayers whose returns formed the basis of the first twenty-five counts. They testified that Charles prepared the returns for them and that the returns did not accurately reflect the income or business-activity information they had provided to Charles. One client testified that Charles suggested that she falsely report income from dancing, mentioning the customer's proximity to a nearby dance club when the client raised the risk of her return being audited. The jury was presented with evidence that twenty-five returns, filed over a number of years, contained material misstatements that did not originate with the taxpayers. Thus, separate from Exhibit 116a, the jury heard overwhelming evidence that Charles intentionally filed false client returns. In addition, as to Counts 26 and 27, the Government presented evidence in the form of Charles's bank accounts and tax returns that she failed to report the tax-preparation fees she received from her #1 Tax Lady business. The Government also presented evidence that on her 2010 tax return Charles claimed another person's deceased child as a dependent. Based on the overwhelming evidence against her, we are convinced that the admission of Exhibit 116a did not materially affect the jury's verdict, and any error in its admission was harmless. *See Clay*, 667 F.3d 689, 700.

**IV**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

**GUY, Circuit Judge, concurring.** I concur in the result reached by Judge White and write separately because I would also affirm on other grounds. Specifically, although I agree that any error in the admission of Exhibit 116a would be harmless, I do not believe the evidence was admitted in error.

To begin with, there is no dispute as to the authenticity of the evidence since the summary consisted of information from the records of the IRS. Second, the evidence was directly linked to Charles because the returns were filed using her internet IP address and a portion of each refund went directly into one of her bank accounts. Third, the evidence was clearly relevant to prove the falsity of Charles' own tax returns as it reflected her receipt of over $700,000 in unreported income. Fourth, it also was direct evidence relevant to the false claims counts, particularly in light of her contention that she only told her clients generally how to file their tax returns and they did the rest. Finally, although Charles contends that the admission of Exhibit 116a was unduly prejudicial, that argument might have more traction if the evidence had been admitted solely under Rule 404(b). As it is, all direct evidence is prejudicial in the sense that it is introduced by the government in order to establish guilt.

**CLAY, Circuit Judge, dissenting.** Defendant Fontrise Charles was convicted of filing twenty-five falsified tax returns on behalf of the clients of her tax preparation business, and failing to report the income from that business on her personal tax returns. Her trial was essentially a contest of credibility. Ten of Charles' clients testified for the government that Charles doctored their returns without their consent to maximize the tax refund they could receive under the Earned Income Tax Credit, while pocketing a portion of those refunds for herself. Charles on the other hand testified that she had merely taught her clients how to prepare their own returns, and that any false statements in the returns were products of her clients' own wrongdoing.

At trial, the government introduced a summary exhibit ("Exhibit 116a" or "the exhibit") prepared by an IRS agent that noted certain common characteristics shared by many of the 967 returns filed by Charles between 2009 and 2013. *See* Maj. Op. at 3 (summarizing Exhibit 116a). Exhibit 116a included: (i) the percentage of the returns that claimed an Earned Income Tax Credit; (ii) the percentage that incorporated an IRS Schedule C Form; (iii) the percentage that listed the taxpayer's occupation as "dancer," and (iv) the total dollar amount that Charles earned from her tax preparation business. This exhibit was offered by the government to show: (i) that most of the 967 returns were fraudulent, and therefore the twenty-five returns charged in the indictment could not have been false by mistake; and (ii) that Charles received a substantial amount of money from her tax preparation business that was never reported on her personal income tax returns.[1]

---

[1] Judge Guy argues that Exhibit 116a was admissible because it summarized tax returns linked to Charles, and was relevant to the charges levied against her. *See* Concurring Op. However, as explained herein, Exhibit 116a should not have been admitted as Rule 404(b) evidence because the government failed to put forward any evidence that the vast majority of the returns summarized in the exhibit were fraudulent—the exhibit's relevance is not in issue. *See infra*, § I. Judge Guy also makes the odd claim that "there can be no doubt as to the authenticity of the [exhibit] since the summary consisted of information from the records of the IRS." This is simply not true as a general proposition. Although the accuracy of the numbers recited in Exhibit 116a is not at issue in this appeal, nothing in the Rules of Evidence prevents a defendant from offering evidence that an IRS summary contains false or misleading information. Whether any given exhibit is accurate depends on whether the exhibit was compiled correctly and reliably, and not whether it purports to come from the federal government's records.

In this appeal, Charles argues that Exhibit 116a should have been excluded under Federal Rule of Evidence 404(b)—which prohibits the use of a defendant's prior wrongful acts to show that she committed a specific crime on a particular occasion—because the government never laid any foundation that the bulk of the returns summarized in Exhibit 116a were fraudulent. The majority holds that if it was error to admit the exhibit, that error was harmless as a matter of law. Maj. Op. at 7. Because I conclude that it was most certainly error for the district court to admit Exhibit 116a without proper foundation, and the exhibit deprived Charles of any meaningful opportunity to mount a successful defense, I respectfully dissent.[2] I would vacate Charles' convictions and sentence and remand for a new trial.

## I.  Exhibit 116a Should Have Been Deemed Inadmissible as Rule 404(b) Evidence

Federal Rule of Evidence 404(b) provides as follows:

**(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses; Notice in a Criminal Case.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

**(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

**(B)** do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

When reviewing a district court's decision to admit evidence of a defendant's extraneous wrongful conduct under Rule 404(b), we must generally make three determinations: (i) was there a sufficient foundation that the wrongful conduct actually occurred? (ii) is the evidence being offered for a permissible purpose? and (iii) should the evidence nevertheless be excluded as unfairly prejudicial under Federal Rule of Evidence 403? *See United States v. Gibbs*, 797 F.3d

---

[2] However, I do not dispute the majority's conclusion that Charles' challenge to the standard of proof the district court used in performing the loss calculation for Charles' sentence is foreclosed by our precedents. *See* Maj. Op. at 5–6 (collecting cases).

416, 422 (6th Cir. 2015). We review the district court's finding that the wrongful conduct actually occurred for clear error. *Id.*

In this case, the district court committed reversible error in admitting Exhibit 116a for two reasons. First, the government did not offer a sufficient foundation to use Exhibit 116a as evidence that Charles falsified any tax returns other than the twenty-five it charged in the indictment. The Supreme Court has long held that in "the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988); *see also Dowling v. United States*, 493 U.S. 342, 348 (1990). "The prosecution is not required to prove by a preponderance of the evidence that a prior bad act occurred," *United States v. Mack*, 729 F.3d 594, 602 (6th Cir. 2013), but it must offer enough evidence to show a "substantial probability" that the defendant actually committed the prior bad acts she is accused of. *United States v. Lattner*, 385 F.3d 947, 956 (6th Cir. 2004).

In this case, Charles was charged with twenty-five counts of making false statements to the government. At trial, the government offered evidence showing that the twenty-five tax returns underlying the twenty-five false statement counts contained false and fraudulent information; specifically, the ten taxpayers associated with these twenty-five returns testified that the returns did not accurately report their income, and that Charles had offered to falsify the returns. However, the government offered *no evidence whatsoever* that any of the hundreds of other tax returns filed by Charles and summarized in Exhibit 116a were fraudulent, and thus failed to lay the proper foundation to admit the exhibit as Rule 404(b) evidence.

The government argues that the jury could have inferred that all 967 of the tax returns summarized in Exhibit 116a were fraudulent because those returns were similar to the twenty-five that the government proved were inaccurate through trial testimony, but this argument badly misses the mark. Perfectly valid tax returns may look identical in every way to tainted ones; the

-11-

only way to tell that a return is fraudulent is to offer evidence that it does not actually reflect the financial circumstances of the taxpayer, as the government did for each of the twenty-five fraudulent returns charged in the indictment. Moreover, the government's reasoning is circular. The government asked the district court to infer that Charles falsified up to 967 tax returns because many of the returns she filed bore similarities with the twenty-five returns charged in the indictment, but wanted the jury to make the inverse inference that Charles must have falsified the twenty-five charged returns because she falsified the hundreds of returns summarized in Exhibit 116a. Our precedents establish that this species of logical trickery is insufficient to carry the government's burden to provide "independent evidence" that its proposed exhibit "is probative of the material issue for which it was offered"—in this case, that Charles falsified other returns beyond those charged in the indictment. *See, e.g.*, *United States v. Hentzen*, 638 F. App'x 427, 433–34 (6th Cir. 2015) (holding that Rule 404(b) evidence was erroneously admitted where government relied on similar circular logic to justify evidence's admission without any independent evidence establishing the evidence's probative value). Because the government offered no evidence that would allow the jury to properly infer that all (or even most) of the 967 returns summarized in Exhibit 116a were invalid, Exhibit 116a should not have been admitted as evidence that Charles submitted false returns beyond those charged in the indictment.[3]

---

[3] Without any corroborating evidence to show that all of the returns summarized in Exhibit 116a were fraudulent, the exhibit itself was irrelevant as to the twenty-five false claim counts, and therefore unfairly prejudicial as to those counts. *See Huddleston*, 485 U.S. at 689. However, Exhibit 116a may have been relevant as to the two counts that charged Charles with committing fraud in her own tax returns. The exhibit purported to show that Charles received substantial income from her tax preparation activities that she did not report on her tax returns. This may have been sufficient to justify the exhibit's admission under Rule 401, even though the exhibit had no probative value as to the false claim counts. *See, e.g.*, *United States v. Jones*, 748 F.3d 64, 70 (1st Cir. 2014) (holding that evidence is admissible when it is relevant as to one count, even if it is irrelevant as to others); *United States v. Morris*, 532 F.2d 436, 444 (5th Cir. 1976) (same). But the exhibit should not have been used as evidence that Charles was guilty of the false claim counts, and Charles was entitled to a cautionary instruction to that effect. *See* Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose--but not . . . for another purpose--the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

Second, the district court erred by failing to make any factual findings regarding whether the uncharged returns summarized in Exhibit 116a were fraudulent. We have held that the "lack of the requisite factual finding that the prior act occurred constitutes clear error," *Mack*, 729 F.3d at 602, unless the district court's discussion of a Rule 404(b) motion is so exhaustive that we can infer that the district court made the necessary factual finding even if it did not explicitly say so. *See Lattner*, 385 F.3d at 956 ("The district court, by denying Lattner's motion to suppress after such lengthy exposition of the issues, ruled that there was a substantial probability that the other acts had occurred."). The record discloses no indication that the district court seriously grappled with the government's lack of evidence that the bulk tax returns summarized in Exhibit 116a were fraudulent. And the district court's failure to make an explicit finding that the uncharged returns were fraudulent deprives us of the ability to conduct meaningful appellate review. Accordingly, I would also conclude that the district court clearly erred by failing to make a factual finding as to whether any of the uncharged returns summarized in Exhibit 116a were fraudulent.

## II.    The Error Was Not Harmless

The majority concludes that any error in admitting Exhibit 116a was harmless, because the evidence against Charles was "overwhelming." *See* Maj. Op. at 7; *see also* Fed. R. Crim. P. 52(a) (directing courts to disregard any "error, defect, irregularity, or variance that does not affect substantial rights"); *Mack*, 729 F.3d at 603 ("[A]dmission of other-act evidence constitutes harmless error 'if the record evidence of guilt is overwhelming, eliminating any fair assurance that the conviction was substantially swayed by the error.'" (quoting *United States v. Clay*, 667 F.3d 689, 700 (6th Cir. 2012))). I respectfully disagree.

As the majority recounts, the government's evidence against Charles principally consisted of testimony from ten of her clients that Charles prepared their "returns for them and that the returns did not accurately reflect the income or business-activity information they had

provided to Charles." Maj. Op. at 7. Charles, by contrast, testified that she had merely given her clients the knowledge necessary to file their own returns, and that any falsehoods in the returns were therefore the result of her clients' own wrongdoing. The jury's task was thus to assess who was more credible: Charles or her clients. Each of the ten witnesses had a strong incentive to deflect responsibility for the false information in the defective tax returns onto another party, and to deny his or her own culpability.

In this context, Exhibit 116a was extremely prejudicial because it totally destroyed Charles' credibility. *United States v. Corsmeier*, 617 F.3d 417, 422 (6th Cir. 2010) (error not harmless where improperly admitted evidence "muddied the image of a successful businesswom[a]n that Defendant hoped to paint"). Charles may have been able to convince at least one juror that ten of her clients were lying to cover up their own fraud, but no rational person would believe that *hundreds* of clients encompassing 967 tax returns would have all lied on their returns in almost exactly the same way. Exhibit 116a was thus an unusually potent weapon for the government because it struck right at the core of Charles' defense strategy. *See United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994) ("When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact. That, of course, is why the prosecution uses such evidence whenever it can."). Indeed, the government emphasized the exhibit in its closing argument to the jury, arguing that Charles had a motive to commit the crimes charged in the indictment because she reaped hundreds of thousands of dollars in fees from hundreds of (impliedly) fraudulent tax returns. *See State Farm Mut. Auto. Ins. Co. v. Accident Victims Home Health Care Servs., Inc.*, 467 F. App'x 368, 373 (error not harmless where the opposing party "emphasized the improperly admitted evidence when it asked the jury to return a verdict in its favor, and the district court did not give any cautionary instructions to the jury concerning this evidence"); *United States v. Richardson*, 597 F. App'x 328, 337 (6th Cir. 2015) (error not harmless where prosecution emphasized improper evidence in

closing argument, and evidence was of defendant's prior commission of the same offense). The government should not have been given such a substantial trial advantage without first offering some evidence that the returns summarized in Exhibit 116a actually contained false information, and should have been limited to offering Exhibit 116a as evidence that Charles failed to report income on her own tax returns. *See Clay*, 667 F.3d at 701 (error not harmless where it permitted jury to make adverse inference that was not supported by the record).

Accordingly, because the district court's error in admitting Exhibit 116a as evidence that Charles had falsified hundreds of tax returns was grossly prejudicial and not harmless, I must respectfully dissent from the majority's decision to affirm Charles' convictions and sentence.