# United States Court of Appeals
## For the First Circuit

No. 21-1779

UNITED STATES OF AMERICA,

Appellee,

v.

BYRON ALLAN CARDOZO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Thompson, Circuit Judges.

Leslie Feldman-Rumpler for appellant.
Alexandra W. Amrhein, Assistant United States Attorney, with
whom Rachael S. Rollins, United States Attorney, was on brief, for
appellee.

May 26, 2023

**SELYA**, **Circuit Judge**. Cyberstalking is an ugly crime, and Congress has made it clear that an order for restitution is one way of bringing offenders to account. This appeal concerns the implementation of that restitution remedy. In the underlying case, defendant-appellant Byron Allan Cardozo was convicted of both cyberstalking and making interstate threats. See 18 U.S.C. §§ 2261A(2)(B), 875(c). Earlier, we affirmed his sentence but left open the issue of restitution. See United States v. Cardozo, Nos. 20-1318, 20-1398, 2021 WL 3771818, at *2 (1st Cir. Aug. 25, 2021) (per curiam). The district court then entered an amended judgment, ordering the defendant to pay restitution to the victim in the sum of $72,112.62.

In this court, the defendant contests the district court's restitution order. See United States v. Cardozo, No. 18-10251, Dkt. 88 (D. Mass. Sept. 2, 2020). After careful consideration of a series of dystopian events and a constellation of expenses incurred in consequence of those events, we modify the restitution order and affirm the order as modified.

**I**

We briefly rehearse the relevant facts and travel of the case. Because this appeal trails in the wake of a guilty plea, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI

Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

The defendant had a sexual encounter with Jane Doe in 2001, when he was seventeen years old and she was only thirteen. At the time, the defendant and Doe attended the same school in Florida.

Over the course of the next fifteen years, the defendant periodically tried to contact Doe. In 2016, Doe responded to a Facebook message from the defendant. She explained that she felt traumatized by the 2001 episode and wanted to publish an essay about it. The defendant gave Doe permission to publish such an essay.

Doe was true to her word: she wrote the essay and arranged for its publication in an online magazine in December of 2016. In the essay, she used pseudonyms for everyone but herself and described the sexual encounter as coercive and traumatic.

For the next twenty months, the defendant (anonymously, for the most part) used various online platforms to harass and threaten Doe. He contacted Doe on hundreds of occasions, sometimes through Facebook or Twitter and sometimes by posting comments on her personal website. When Doe blocked him, he created false accounts and continued to hassle her. The content of the messages careened between claims that Doe had fabricated the coercive nature of the encounter, graphic descriptions of real and imagined sexual

exploits with her, professions of love, suggestions that he would commit suicide, and express and implied threats of violent retribution.

In March of 2017, Doe retained counsel in Florida (where the defendant resided). Her Florida lawyers communicated with the defendant's parole officer and sent the defendant a cease-and-desist letter. Despite these efforts, the harassment continued. That spring, Doe's lawyers sought and received a temporary protection order from a Florida state court. Later on, that court issued an injunction, barring the defendant from communicating with Doe. The injunction proved to be of little help: after it issued, the defendant's conduct became even more menacing.

In 2017, Doe was living in New York. She retained New York counsel in November of that year. Her family — concerned for her safety — hired a Florida-based private investigator in June of 2018. The investigator was tasked with monitoring the whereabouts of the defendant (who lived in Florida) to ensure that he did not attempt to contact Doe in person. Unbeknownst to Doe, the investigator tried to speak with the defendant and a physical altercation ensued (in which the defendant was injured).

The defendant's harassment made Doe fear for her safety and the safety of her family, friends, and colleagues. These fears

adversely affected her mental health and impaired her ability to work, sleep, and live normally.

By 2018, Doe had moved to Massachusetts and the authorities were digging into her complaints about the defendant's harassment.[1]  After the facts were gathered, a federal grand jury sitting in the District of Massachusetts returned an indictment charging the defendant with one count of cyberstalking and one count of making interstate threats.  The defendant moved to dismiss the indictment on First Amendment grounds.  The district court denied the motion.  See United States v. Cardozo, No. 18-10251, 2019 WL 2603096, at *5 (D. Mass. June 24, 2019).

On August 20, 2019, the defendant entered a straight guilty plea to both counts of the indictment.  The PSI Report did not address restitution in any meaningful detail; it merely stated that restitution "shall be ordered" and that "[n]o restitution claims have been made to date."

The district court convened the disposition hearing on December 18, 2019.  Doe was in attendance, accompanied by her New York counsel, and she delivered a lengthy victim-impact statement.  The court sentenced the defendant to a seventy-month term of immurement, to be followed by a three-year term of supervised

---

[1]  Doe moved from New York to Massachusetts at some indeterminate point during the offense conduct.  It is not clear from the record exactly when the move took place.

- 5 -

release.  At the hearing, the government informed the district court that it intended to seek restitution but that it was still "working on the backup" needed to crystalize the amount.  The court accepted that representation, noting that the applicable statute "allows for restitution to be submitted after the sentencing."

On January 14, 2020, the government filed a restitution request for $72,350.12.  This request was meant to compensate Doe for fees that she incurred "in the course of the federal investigation and prosecution in Boston as well as the investigation, state court order of protection, and related activities in Florida."  In support, the government submitted billing statements from the Florida and New York lawyers, which included expenses for "evidence review, background review of [the defendant], obtaining state court injunctions, cease and desist letters, orders of protection and other relief in Florida, advocacy with law enforcement, . . . meetings with [Doe] and prosecutors, coordination regarding arrest of offender, support with victim impact statement, and two federal court dates" for the disposition hearing after defense counsel missed the first hearing due to a scheduling error.

The defendant objected to the proposed restitution amount, asserting that it was based on insufficient evidence; that the defendant's conduct did not cause Doe to incur the described expenses because hiring lawyers was elective; that the work

performed was unnecessary, given the government's investigation; and that the expenses were unreasonable. The district court overruled the defendant's objections and — on September 2, 2020 — the court ordered the defendant to pay restitution in the amount of $72,112.62 (subtracting only $237.50 from the government's requested amount).[2]  See Cardozo, No. 18-10251, Dkt. 88, at 4-5.

The defendant appealed. We affirmed his sentence but held that the restitution order (which had not yet ripened into a judgment) was not properly before us. See Cardozo, 2021 WL 3771818, at *2. Following a remand, the district court entered an amended judgment that encompassed the restitution order. This timely appeal ensued.

## II

On appeal, the defendant revives certain arguments previously made and also introduces some new ones. Before arraying those arguments, we frame the governing law and the applicable standards of review.

---

[2] The subtracted sum represented a charge made by Doe's New York lawyers for drafting a letter to defense counsel requesting reimbursement to Doe due to defense counsel's failure to appear at the first scheduled disposition hearing. The court explained that the "rescheduling and any expenses associated with the victim and/or her attorney's duplicative appearance in court was clearly not a loss caused by [d]efendant, but instead was caused by counsel for [d]efendant's own scheduling error." Cardozo, No. 18-10251, Dkt. 88, at 4.

- 7 -

Restitution is meant to "mak[e] a victim whole by restoring the monetary equivalent of losses suffered in consequence of the defendant's criminal activity." United States v. Salas-Fernández, 620 F.3d 45, 48 (1st Cir. 2010). Through 18 U.S.C. § 2264, Congress has directed district courts to order restitution in cyberstalking cases. Section 2264 requires restitution for the "full amount of the victim's losses." 18 U.S.C. § 2264(b)(1); see Lagos v. United States, 138 S. Ct. 1684, 1689-90 (2018). This anodyne includes "any costs incurred by the victim for . . . attorneys' fees, plus any costs incurred in obtaining a civil protection order; . . . [and] any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2264(b)(3).

A restitution order issued pursuant to section 2264 must comport with the procedural requirements of the Mandatory Victims Restitution Act (MVRA). See id. §§ 2264(b)(2), 3664. It is the government's burden to establish the amount of the victim's losses by preponderant evidence. See id. § 3664(e). That burden is not a heavy one: "[a]s long as the court's order reasonably responds to some reliable evidence, no more is exigible." United States v. Naphaeng, 906 F.3d 173, 180 (1st Cir. 2018) (alteration in original) (quoting United States v. Sánchez-Maldonado, 737 F.3d 826, 828 (1st Cir. 2013)).

- 8 -

When a party challenges a restitution order, preserved claims of error are reviewed for abuse of discretion. See United States v. Ochoa, 58 F.4th 556, 560 (1st Cir. 2023). Within that rubric, we "examin[e] the court's subsidiary factual findings for clear error and its answers to abstract legal questions de novo." Id. at 560-61 (alteration in original) (quoting United States v. Chiaradio, 684 F.3d 265, 283 (1st Cir. 2012)).

Our standard of review differs, however, when a party raises a claim of error that was not advanced below. When that happens, appellate review is only for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). "Under that demanding standard, the appellant must show '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Franklin, 51 F.4th 391, 400 (1st Cir. 2022) (quoting Duarte, 246 F.3d at 60). "The party asserting plain error bears the burden of persuasion" as to all four elements. United States v. Pabon, 819 F.3d 26, 33 (1st Cir. 2016).

With this preface in place, we turn to the defendant's asseverational array.

## A

The defendant's first claim of error posits that the district court failed to comply with the procedural requirements of the MVRA. Because the defendant did not advance this claim below, our review is for plain error. See Duarte, 246 F.3d at 60.

The MVRA imposes a set of procedural requirements on the issuance of restitution orders under section 2264. See 18 U.S.C. §§ 2264(b)(2), 3664. As relevant here, the district court "shall order the probation officer to obtain and include in [the] presentence report, or in a separate report . . . information sufficient for the court to exercise its discretion in fashioning a restitution order" and, "to the extent practicable, a complete accounting of the losses" to the victim. Id. § 3664(a); see Fed. R. Crim. P. 32(c)(1)(B) (stating that, when restitution is allowed, "[t]he probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution").

In this case, the defendant assigns error to the district court's failure to order the probation office to prepare a restitution report. He broadens this assignment of error by noting that the PSI Report did not contain any substantive information about restitution and lacked "a complete accounting of the losses."

Even if we assume, for argument's sake, that this challenge identifies clear or obvious error — the absence of any

- 10 -

concrete restitution information either in the PSI Report or in a supplement to that report — the challenge stumbles at the third step of the plain error construct. An error affects the defendant's substantial rights only if there is "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." United States v. Burghardt, 939 F.3d 397, 403 (1st Cir. 2019) (alteration in original) (quoting United States v. Turbides-Leonardo, 468 F.3d 34, 39 (1st Cir. 2006)). Here, the government supplied the district court with the detailed restitution accounting that the probation office omitted. The defendant has failed to explain how the result would have been different had the district court insisted that the probation office prepare a restitution report. So, too, the defendant has failed to explain how the result would have been different had the PSI Report, rather than the government's proffer, contained more fulsome information about the claimed losses. And to cinch the matter, the record reflects that the district court placed the devoir of persuasion squarely on the government and concluded that the government had carried its burden based on the information actually presented. Given this tableau, we have no reason to think that either the information or the outcome would have changed had the probation office followed the literal requirements of the statute.

To say more would be to paint the lily. We hold that the defendant has failed to show that he was prejudiced by the claimed procedural error. Thus, plain error is plainly absent.

**B**

This brings us to the defendant's suggestion that the restitution award was not supported by reliable evidence. He says that the evidence — billing statements from the victim's Florida and New York attorneys — was not detailed enough, was not sufficiently corroborated, and was untrustworthy because it was unsworn.

In the court below, the defendant asserted that the billing statements were inadequate to support a restitution award because they were redacted and the redactions made it difficult to assess whether the charges were either reasonable or causally related to the offense conduct. But he has abandoned these assertions on appeal, and he made no argument below as to the reliability of the billing statements based on lack of detail, lack of corroboration, or lack of attestation. Accordingly, our review of the defendant's newly minted reliability claim is for plain error. See Duarte, 246 F.3d at 60.

To prevail under the plain error standard, the defendant must identify a "clear or obvious" error. Id. Such an error is an error that is "'indisputable' in light of controlling law." United States v. Rabb, 5 F.4th 95, 101 (1st Cir. 2021) (quoting

- 12 -

United States v. Jones, 748 F.3d 64, 70 (1st Cir. 2014)). In this instance, we discern no clear error.

If a loss amount is disputed, the government must establish the loss amount by a preponderance of the evidence. See 18 U.S.C. § 3664(e). In this regard, the district court "may consider all relevant information that has 'sufficient indicia of reliability to support its probable accuracy,'" including undisputed portions of the PSI Report. United States v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2012) (quoting United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010)); see Sánchez-Maldonado, 737 F.3d at 828. The court "has wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing." Gallardo-Ortiz, 666 F.3d at 811 (quoting Cintrón-Echautegui, 604 F.3d at 6).

Here, the government submitted detailed billing statements from Doe's Florida and New York counsel. For each charge, the statements list the date, the hourly rate, the time spent, and a description of the work performed. It was within the district court's discretion to accept these precise and well-explained billing statements as sufficiently detailed and reliable evidence of the enumerated losses — especially since those billing statements were coupled with the undisputed narrative in the PSI Report, which related in some detail Doe's serial attempts

to thwart the defendant's pattern of harassment and threats. See Naphaeng, 906 F.3d at 180.

This result is unaffected by the fact that the billing statements are unsworn. We are aware of no authority that requires a billing statement, prepared in the ordinary course of professional practice, to be sworn before it can be deemed reliable for purposes of a restitution order. Although a sworn statement attesting to business records may be reliable and, perhaps, preferable evidence, see, e.g., United States v. Amato, 540 F.3d 153, 162-63 (2d Cir. 2008), abrogated on other grounds by Lagos, 138 S. Ct. 1684; United States v. Rochester, 898 F.2d 971, 982 (5th Cir. 1990), no case holds that verification under oath is a sine qua non for a finding of reliability.

The cases that the defendant cites are not on point. Each of them involved a restitution order based on skeletal, irregular, or conclusory evidence. See, e.g., United States v. Villalobos, 879 F.3d 169, 172 (5th Cir. 2018) (vacating order when court imposed restitution after finding no loss); United States v. Tsosie, 639 F.3d 1213, 1222-23 (9th Cir. 2011) (vacating order when court provided no reasoning and only evidence was irregular spreadsheet); United States v. Waknine, 543 F.3d 546, 557-58 (9th Cir. 2008) (vacating order when supporting affidavits were "too summary and too conclusory to be sufficiently reliable"); United States v. Jones, 475 F.3d 701, 705-07 (5th Cir. 2007) (vacating

order when court imposed restitution based solely on government assertions). The evidence in those cases is not at all equivalent to the detailed records that the government furnished here. Apples must be compared to apples, and the defendant's proffered cases do not satisfy this standard. The short of it, then, is that the defendant has not shown that it was a clear or obvious error for the district court to rely on the billing statements to support a restitution order.

## C

Taking a different tack, the defendant points out that loss amounts incorporated in a restitution order must be causally related to the offense conduct. See United States v. Yung, 37 F.4th 70, 83 (3d Cir. 2022) (citing Paroline v. United States, 572 U.S. 434, 449 (2014)). Building on this foundation, he claims that such a causal nexus is missing here.

We have not yet had occasion to address the causation requirement under section 2264. But the statute itself defines the "full amount of the victim's losses" as comprising "losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2264(b)(3). It follows, therefore, that any loss awarded in a restitution order issued under section 2264 must have been proximately caused by the offense conduct. See Yung, 37 F.4th at 82-83; United States v. Hayes, 135 F.3d 133, 137-38 (2d Cir. 1998); see also United States v. Thunderhawk, 860 F.3d 633, 636 (8th Cir.

- 15 -

2017) (interpreting same language in 18 U.S.C. § 2248(b)(3)). That conclusion accords with our case law interpreting similar language in other restitution statutes. See, e.g., United States v. Kearney, 672 F.3d 81, 95-96 (1st Cir. 2012) (collecting cases interpreting similar language in 18 U.S.C. § 2259(c)(2)).

In practical terms, the inquiry into proximate cause asks whether the loss "'has a sufficiently close connection to the conduct' at issue." United States v. Chin, 965 F.3d 41, 60 (1st Cir. 2020) (quoting Robers v. United States, 572 U.S. 639, 645 (2014)). Put another way, the question is whether the loss is "within the reasonably foreseeable risks of harm created by the defendant's conduct." Kearney, 672 F.3d at 96 (alteration omitted) (quoting Staelens v. Dobert, 318 F.3d 77, 79 (1st Cir. 2003)). The defendant makes two independent causation arguments, and we address them separately.

**1**

The defendant first contends that his conduct did not proximately cause Doe to incur charges by New York counsel related to (a) the altercation between the defendant and the private investigator hired by Doe's family, (b) a charge for a quarter hour spent reviewing the defendant's arrest records "to give [Doe] [a] full list for her publisher's [attorneys] (re her new book)," and (c) charges for time spent, in the defendant's words, "serving as an all-purpose conduit for communications between" Doe and the

United States Attorney's Office (USAO).  The defendant did not raise any of these claims below and, thus, our review is for plain error.  See Duarte, 246 F.3d at 60.

With respect to the first category of charges, the defendant submits that charges related to the private investigator's altercation with him were not proximately caused by his offense conduct and that he cannot, therefore, be required to pay restitution for any time the attorneys spent addressing them.[3]  Curiously, however, the defendant has not directed us to any particular charges in this respect.  Based on our independent examination of the record, the only charges that appear to relate to the altercation are telephone calls (which together add up to less than one hour).  In those calls, the investigator informed counsel of the incident and counsel relayed that information to Doe and the USAO.  This jibes with the singular reference to the subject related in the PSI Report, which tells us only that the investigator and a colleague "attempted to speak to [the defendant], and a physical altercation ensued."  Against that sketchy backdrop, and without any helpful guidance on which specific charges should be excluded, we see no justification for

---

[3] The private investigator's fees were apparently paid by Doe's family and do not account for any part of the restitution award.  Consequently, those fees are not at issue here.

concluding that the district court committed a clear or obvious error.

We need not linger long over the charges for time spent reviewing the defendant's arrest record for Doe's publisher's attorneys and communicating with the USAO. Doe is an author whose published essay was the catalyst for the offense conduct. It was reasonably foreseeable — or at least it is not clear or obvious that it was not reasonably foreseeable — that Doe's attorneys would need to communicate with her publishers about the defendant. As for communications with the USAO, it was readily foreseeable that Doe's counsel, whom she retained before any charges were instituted against the defendant, would interface with the USAO on her behalf once charges were brought.

**2**

The defendant's remaining causation argument relates to the two trips that Doe's New York counsel made to Boston in connection with sentencing (after the disposition hearing was aborted on the first trip due to a scheduling error on the part of defense counsel). The defendant did not raise this claim below and, thus, our review is for plain error. See Duarte, 246 F.3d at 60.

Refined to bare essence, the defendant contends that it was not reasonably foreseeable that New York counsel would make two trips to Boston for sentencing. Reasoning from this premise,

he objects to the inclusion of charges from the second trip on the ground that — if both trips related solely to sentencing — the charges from the second trip must have been duplicative of those from the first.

The defendant buttresses this contention by noting a perceived inconsistency in the district court's order. The court rejected a $237.50 charge in New York counsel's billing statements for drafting a letter to defense counsel "requesting reimbursement to [Doe] due to [defense counsel's] failure to appear" at the first scheduled disposition hearing. See supra note 2. The court stated that "rescheduling and any expenses associated with the victim and/or her attorney's duplicative appearance in court was clearly not a loss caused by [d]efendant, but instead was caused by counsel for [d]efendant's own scheduling error." Cardozo, No. 18-10251, Dkt. 88, at 4. The defendant posits that the district court's order is internally inconsistent, given that (in his view) the court's stated reason for denying the $237.50 charge applies equally to all other charges associated with the second trip to Boston, inasmuch as the trip itself was duplicative.

The defendant is painting with too broad a brush. His argument assumes that all charges from both trips related solely to sentencing. That assumption, however, is neither clear nor obvious from the record. There are charges from both trips that plausibly relate to matters apart from sentencing (for instance,

charges for time spent meeting with Doe). It is, therefore, neither clear nor obvious that all the charges are duplicative.

The defendant has not attempted to argue, either here or below, that the specific charges from the second trip were all sentencing-related. Nor has he made any effort to distinguish between charges that are duplicative and charges that are not. Relatedly, he has made no effort to explain why the charges that are seemingly not related to sentencing were otherwise unforeseeable. Instead, he rests his claim of error squarely on the unproven theory that the second trip itself is duplicative.

Given the tenor of the defendant's argument, we conclude that he has failed to demonstrate — clearly and obviously — that the charges from the second trip should have been excluded as duplicative. Consequently, we discern no plain error in the district court's inclusion of those charges in its restitution order.

**D**

The defendant's fourth set of challenges concerns the reasonableness of the restitution award. In the restitution context, reasonableness is a protean concept. One aspect of the question of reasonableness is typically subsumed by the question of causation, that is, whether a loss was reasonably foreseeable. See Kearney, 672 F.3d at 100; see also United States v. Vaknin, 112 F.3d 579, 590 (1st Cir. 1997) (explaining, in restitution

context, that "[t]he watchword is reasonableness" when assessing "the causal nexus between the conduct and the loss"), abrogated on other grounds by United States v. Anonymous Defendant, 629 F.3d 68, 73 (1st Cir. 2010). Another aspect of the reasonableness inquiry, though, is born of the notion that the victim should not be permitted to recover for excessive losses. See, e.g., In re Akebia Therapeutics, Inc., 981 F.3d 32, 38-39 (1st Cir. 2020). We address that aspect here.

**1**

As a start, the defendant advances a general claim that the attorneys' fees included in the restitution award are excessive and, thus, unreasonable. Because this claim was raised below, our review is for abuse of discretion. See Ochoa, 58 F.4th at 560.

The defendant relies primarily on United States v. Kukstis, No. 18-10241, Dkt. 50 (D. Mass. Dec. 19, 2018), an unpublished decision in a cyberstalking case in which the district court awarded attorneys' fees as part of a restitution order. The defendant contends that a comparison between the order in this case and the order in Kukstis demonstrates that the attorneys' fees awarded by the court below are unreasonable.

This contention is unconvincing. No two cases are likely to be identical, and the defendant sets up a false dichotomy: a direct comparison of the average monthly attorneys' fees in Kukstis and in this case in order to determine what is reasonable. But

one size does not fit all, and the reasonableness of the fees depends on the idiosyncratic circumstances of each case and the actual work performed. There is no plausible basis for assuming that there is only one reasonable amount of average monthly attorneys' fees across the universe of cyberstalking cases. Thus, comparing average monthly fees in two unrelated cyberstalking cases tells us nothing about whether those fees are reasonable.

The court below determined that Doe's attorneys' fees were reasonable because she had "received significant legal assistance over the course of two years in connection with [d]efendant's ongoing harassment and threats of physical violence." Cardozo, No. 18-10251, Dkt. 88, at 5. The defendant has not succeeded in throwing shade on the factual underpinnings of this determination. Under these circumstances, we see nothing to indicate that the district court abused its wide discretion in concluding that the fees incurred by Doe were reasonable.

**2**

Next, the defendant claims that it was unreasonable for Doe to retain New York counsel and for two attorneys to accompany Doe to the district court hearings in Boston. Because the defendant raised these claims for the first time on appeal, we review them for plain error. See Duarte, 246 F.3d at 60.

We start with the defendant's claim that it was unreasonable for Doe to retain New York counsel even though the

criminal proceedings were prosecuted in Boston. Doing so, he complains, led to unnecessary travel costs.

This plaint does not move the needle. The district court implicitly concluded that it was reasonable for Doe, who lived in New York,[4] to engage New York counsel. This conclusion is buttressed by the fact that Doe retained her New York counsel before criminal proceedings were instituted in Boston. All things considered, we see no clear or obvious error in the district court's conclusions.

Given our holding that it was reasonable for Doe to engage New York counsel, we think it follows that travel to Boston, when necessary, was part and parcel of that engagement. The defendant has offered no evidence to show that either the time allotted for travel or the costs incident thereto were out of line.

We add, moreover, that none of the cases that the defendant cites undermines the district court's ruling that it was reasonable for Doe to recover for travel by her New York counsel. Those cases relate to when recovery for attorneys' fees should be capped at the average local hourly rate rather than a higher non-local rate. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d

---

[4] As we have said, see supra note 1, it is not clear from the record when Doe moved to Massachusetts. But it seems likely that she retained her New York counsel at a time when she lived in New York.

182, 183-84, 191 (2d Cir. 2008) (concluding, in Voting Rights Act context, that recovery for fees for out-of-district attorneys who charged higher hourly rates than local counsel would be allowed so long as retention of out-of-district attorneys was "reasonable under the circumstances"); Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir. 1983) (explaining, in context of Landrum-Griffin Act, that recovery for fees of out-of-town attorneys who charge higher rates may be reasonable if those attorneys have special expertise). The defendant has not offered any comparative evidence of average hourly rates in Boston and New York. Nor has the defendant offered any evidence that the attorneys' travel costs were exaggerated or inappropriate. The district court's recognition of those costs was, therefore, not clearly or obviously erroneous.

As for the claim that it was plain error to allow recovery for two attorneys, we likewise discern no clear or obvious error. In modern litigation, it is not unusual — and certainly not per se unreasonable — for more than one attorney to participate in the representation of a client at a particular hearing or in a particular proceeding. See, e.g., Castañeda-Castillo v. Holder, 723 F.3d 48, 80 (1st Cir. 2013); O'Rourke v. City of Providence, 235 F.3d 713, 737 (1st Cir. 2001).

The lone case that the defendant cites, Copeland v. Marshall, states that having more than one attorney present at a proceeding will sometimes render recovery for both attorneys' fees

duplicative. See 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc). But it tells us nothing about whether having two attorneys accompany Doe in this case was duplicative or unreasonable. On this sparse record, we cannot find clear or obvious error in the district court's allowance of recovery for two attorneys to accompany Doe to Boston for proceedings in the criminal case.

**3**

The defendant also challenges the reasonableness of the amounts billed by Doe's Florida counsel. This claim surfaced for the first time on appeal and, thus, our review is for plain error. See Duarte, 246 F.3d at 60.

When Doe retained her Florida counsel, the defendant resided in Florida. It was, therefore, reasonable for her to engage Florida lawyers to seek an order of protection from a Florida court. See Maceira, 698 F.2d at 40.

The defendant strives to blunt the force of this reasoning. He says that he resided in Jacksonville and that the protection-order proceedings took place there, yet Doe selected counsel who maintained offices in Orlando. The defendant's argument seems to be, at bottom, that it was unreasonable to hire counsel who were located in a different part of Florida because doing so necessarily required extra travel costs. According to the defendant, it is only reasonable to hire out-of-town lawyers if they are specialists. Doe's Florida counsel, the defendant

adds, are clearly not specialists because their charges include research costs related to obtaining a protection order.

At first blush, this claim seems dubious.  The choice of counsel is an intensely personal choice, and courts should afford wide latitude to parties with respect to such choices.  Cf. United States v. Panzardi Alvarez, 816 F.2d 813, 816 (1st Cir. 1987) (explaining that, in criminal context, deference to choice of counsel guarantees "basic trust between counsel and client, which is a cornerstone of the adversary system" (quoting Wilson v. Mintzes, 761 F.2d 275, 279 (6th Cir. 1985))).  We are aware of no rule that requires a plaintiff — on pain of forfeiting eligibility for restitution — to choose counsel who practices in the same city or town in which the offending party resides.[5]

In arguing for a closer geographic fit, the defendant relies on the decision in Arbor Hill.  See 522 F.3d 182.  Arbor Hill is a case under the Voting Rights Act, in which the court concluded that recovery for higher rates charged by out-of-district attorneys would be allowed if the decision to retain them was "reasonable under the circumstances."  Id. at 191.  But Arbor Hill is of scant relevance here:  the defendant makes no attempt to extend its reasoning to this case.

---

[5] Of course, choosing counsel from outside the jurisdiction may present a more nuanced problem.  This claim of error, though, does not require us to delve into those considerations.

Little more need be said.  Doe sought the assistance of Florida counsel to obtain a protection order from a Florida court against the defendant (who resided in Florida).  The defendant has offered no evidence to show that the rates prevailing in the community in which counsel was based (Orlando) were different in any material respect from the rates prevailing in the community where the protection order was issued (Jacksonville).  Nor has he provided any authority rendering it "indisputable," Jones, 748 F.3d at 70, that compensation for travel by a non-specialist attorney is per se unreasonable or (more to the point) unreasonable under the circumstances at hand.  The district court determined (at least implicitly) that the challenged fees were reasonable, and the defendant has given us no clear or obvious reason to set aside that determination.

**E**

The defendant's last argument concerns a discrepancy of $4,308.93 between the total amount of charges reflected on the billing statements and the restitution award.  The defendant did not mention this discrepancy below and, thus, our review is for plain error.  See Duarte, 246 F.3d at 60.

The relevant facts are not in dispute.  The government requested $72,350.12 in restitution.  It sought $12,146.06 for payments made to Florida counsel and $60,204.06 for payments made to New York counsel.  The billing statements that the government

provided from New York counsel, though, added up to only $55,895.13 — an amount that was $4,308.93 less than what the government sought. The district court gave the government most of what it had requested, ordering restitution in the amount of $72,112.62 (subtracting only $237.50). See supra note 2.

The government now concedes that there is a discrepancy between the total of the charges reflected on the billing statements and the total restitution awarded. It nonetheless argues that it was not plain error for the district court to impose a restitution award that was "slightly higher" than the amount supported by the evidence. In the government's view, the court was entitled to rely on the total figure requested, notwithstanding the lack of backup. We think not.

The disputed amount — $4,308.93 — was not supported by anything in the record but, rather, was plucked out of thin air. Each component of a restitution order must correspond to some reliable evidence; such components cannot rest on an "evidentiary void." United States v. De Jesús-Torres, 64 F.4th 33, 44 (1st Cir. 2023). The inclusion of the disputed amount in the restitution order was, therefore, clear and obvious error: it is a clear and obvious error for a court to conclude that billing statements totaling $55,895.13 support an award of $60,204.06. The logical conclusion, then, is that the total loss amount that

the government asserted was premised on an incorrect accounting of the evidence.

Here, moreover, the third and fourth elements of the plain error construct are also satisfied. With respect to the third element — prejudice — we decline the government's invitation to find that such a discrepancy changed the outcome only "slightly." After all, the glaring error added over $4,000 to the defendant's restitution obligation and, thus, affected the defendant's substantial rights.

Finally, the fourth element is satisfied. We think that the fairness, integrity, and public reputation of judicial proceedings are impaired when the court imposes thousands of dollars of restitution based on no evidence at all. Although we do not "hold a sentencing court to a standard of 'absolute precision' when fashioning restitution orders," Simon, 12 F.4th at 64 (quoting Naphaeng, 906 F.3d at 179), a restitution award must "reasonably respond[] to some reliable evidence," id. at 64-65 (quoting Sánchez-Maldonado, 737 F.3d at 828). See De Jesús-Torres, 64 F.4th at 43-44.

In this case, the evidence supported a total of $68,041.19 in restitution, not the $72,350.12 that the government sought. Consequently, we direct that the restitution amount be reduced by subtracting $4,308.93, resulting in a modified award of $67,803.69.

### III

We need go no further.  For the reasons elucidated above, we direct modification of the restitution order as specified herein and affirm the modified restitution order.

**So Ordered**.