# United States Court of Appeals
## For the First Circuit

No. 22-1878

UNITED STATES OF AMERICA,

Appellee,

v.

GARY E. LEACH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Angel Kelley, U.S. District Judge]

Before

Gelpí, Selya, and Lynch,
Circuit Judges.

Christine DeMaso, Assistant Federal Public Defender, for appellant.
Karen L. Eisenstadt, Assistant United States Attorney, with whom Joshua S. Levy, Acting United States Attorney, was on brief, for appellee.

December 21, 2023

**SELYA**, **Circuit Judge**. Defendant-appellant Gary E. Leach had a warped view of what it meant to have "fun." That warped view culminated in the appellant's convictions for cyberstalking and extortion. The appellant now challenges his upwardly variant sentence, contending that it is procedurally flawed, substantively unreasonable, and burdened by an unlawfully imposed condition of supervised release. Concluding that the appellant's arguments lack force, we affirm his sentence in all respects.

## I

We briefly rehearse the relevant facts and travel of the case. "Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

At various times during 2019 and 2020, the appellant attempted to solicit video performances of a sexual nature from at least a dozen Instagram users. We summarize succinctly his harassment of two of those users (whom we shall call Jane Doe A and Jane Doe B) — harassment that formed the basis of his convictions for cyberstalking and extortion.

In October of 2019, the appellant, using an Instagram alias, convinced Jane Doe A to participate in video calls in which

- 2 -

she would undress and perform various sexual acts.  In exchange, the appellant agreed to pay her for her performances.

The appellant instructed Jane Doe A to show her face on camera during these calls, and he recorded one or more of them without Jane Doe A's knowledge or consent.  And when the calls ran their course, the appellant did not pay Jane Doe A as promised.

Approximately two months passed.  Then, the appellant contacted Jane Doe A from a different Instagram alias and sent her a video recording of one of their earlier calls.  He threatened to send the video to her parents if she did not engage in more sexually oriented video calls with him.  Fearing embarrassment, humiliation, shame, and the like, Jane Doe A complied.

On many occasions throughout 2020, the appellant contacted Jane Doe A from numerous Instagram aliases, threatening to send explicit recordings of her to her family members if she did not comply with his demands to video chat with him.  On certain occasions, the appellant demanded that Jane Doe A leave work to video chat with him.  Jane Doe A again obeyed, and the appellant coerced her into performing more sexual and degrading acts over video calls on Instagram.

Throughout these interactions, Jane Doe A repeatedly expressed her desire not to perform the coerced acts.  At one point, she told the appellant, "I just wanna know why you want to

make me so miserable and to keep chasing me like this." He replied, "Honestly, it's fun and you're hot."

The appellant repeatedly promised that he would delete the recordings and photographs he had amassed of Jane Doe A if she complied with his requests. But these promises were honored only in the breach: the appellant continued to retain electronic copies of this content, create new content, and use the recordings to extort more video calls from Jane Doe A.

In 2020, the appellant solicited Jane Doe B for sexual content and recorded her during a Snapchat video call. The appellant subsequently sent an explicit recording of Jane Doe B to her roommate and repeatedly attempted to contact Jane Doe B from different anonymous social media accounts, threatening at one point to send a forty-minute recording of her to her friends if she did not respond to him.

The dam broke in early 2021. When Jane Doe A continued to receive harassing messages from the appellant by means of new Instagram aliases, she contacted the Federal Bureau of Investigation (FBI) and met with FBI agents. She provided the agents with a photograph of the appellant's face that he had sent to her,[1] and the agents identified him as the person in the

_____

[1] The appellant transmitted the photograph to Jane Doe A through an Instagram application that allowed it to be viewed for a temporary duration. Jane Doe A was able to make a permanent

photograph through a reverse image search. The appellant's arrest followed.

In due course, the government charged the appellant by criminal complaint with cyberstalking, see 18 U.S.C. § 2261A(2)(B), and extortion by interstate threat of injury to reputation, see id. § 875(d). The appellant soon pleaded guilty to the charged offenses. After accepting the appellant's guilty plea, the district court ordered the preparation of a PSI Report.

The PSI Report recommended a guideline sentencing range of thirty to thirty-seven months. As part of the plea agreement, the appellant agreed not to challenge any prison sentence of thirty-seven months or less.

The district court convened the disposition hearing on July 20, 2022. At that hearing, neither party objected either to the probation department's proposed guideline sentencing range or to any other part of the PSI Report. Jane Doe A delivered a victim-impact statement in which she described how the appellant repeatedly threatened and demeaned her, causing her to become suicidal and making her feel that she "had no other option in [her] life than to be a sexual slave." The government recommended a thirty-two-month term of immurement, to be followed by thirty-six months of supervised release. The appellant's counsel argued for

_____

copy of the image by taking a photograph of her screen using a digital camera before the image vanished.

- 5 -

a prison sentence of eighteen months, to be followed by thirty-six months of supervised release.

After questioning the parties about what efforts had been made to ensure that any offending content had been deleted, the district court continued the hearing with instructions to the parties to provide the court with more information about the appellant's social media accounts and electronic devices. Once the parties submitted the requested information, the disposition hearing resumed on October 26, 2022.

At the end of this session, the district court imposed an incarcerative sentence of forty-two months, to be followed by thirty-six months of supervised release. It also imposed the special conditions of supervised release recommended in the PSI Report, including a prohibition against working or volunteering in any capacity that would cause the appellant to come in direct contact with children (except with the approval of a supervising probation officer).

In thoughtfully articulating its decision to impose an upwardly variant sentence, the district court gave several reasons:

- First, it highlighted the fact that the appellant caused his victims "[s]exually-based trauma," which it described as "among the most intimate and personal types of harm that one person can inflict

upon another." Relatedly, the court noted that "[p]ost-traumatic stress disorder resulting from being sexually violated can affect every aspect of a victim's life." With these considerations in mind, the court gave special attention to Jane Doe A's statement about the trauma she suffered from the appellant's actions.

- Second, the court pointed to the "length of time over which [the appellant] traumatized his victims," which included "a continuing 18-month campaign of harassment, intimidation, and extortion."

- Third, the court spoke of the "power dynamics present in this case," explaining that the appellant's behavior was "outrageous," in part because he "took gratification in wielding" power over his victims and "revel[ed]" in their anguish.

- Fourth, the court considered "the special role that the Internet played in [the] case," remarking the appellant's use of "multiple anonymous social media accounts" and "the difficulty of identifying and prosecuting Internet-based sex criminals."

The appellant objected. He claimed, among other things, that the parties lacked sufficient notice of the district court's

intention to impose an upwardly variant sentence. Even so, the appellant did not request a continuance. The district court overruled the appellant's objection in an electronic order, explaining that because the "upward variance was based on facts culled from the charging documents, the pre-sentence report, the parties' sentencing submissions, and the victim impact statement, all of which were readily available to the parties months before imposition of the variance . . . [,] there was no deficiency of notice."

The appellant also objected to the special supervised release condition prohibiting him from working or volunteering in any capacity that would cause him to come in direct contact with children. The district court overruled this objection as well and declined to strike the condition.

This timely appeal followed.

## II

In this venue, the appellant mounts a challenge to his upwardly variant sentence. He argues that the sentence was procedurally flawed because the district court neither gave sufficient notice of its intention to impose an upward variance nor adequately explained the reasons underlying the variance. In addition, the appellant argues that the sentence was substantively unreasonable. He also assails the condition of supervised release prohibiting him from working or volunteering in any capacity that

would put him in direct contact with children, arguing that this restriction was not sufficiently grounded in the record.

In adjudicating sentencing appeals, we typically begin by "examin[ing] any claims of procedural error" and — if no procedural error is found — proceed to examine any challenge to the substantive reasonableness of the sentence. United States v. Díaz-Lugo, 963 F.3d 145, 151 (1st Cir. 2020); see United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019). Tagalong matters, such as complaints about conditions of supervised release, can then be addressed.

We review preserved claims of sentencing error, whether procedural or substantive, for abuse of discretion. See United States v. Medina-Villegas, 700 F.3d 580, 583 (1st Cir. 2012). But we review unpreserved claims only for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

With these standards in mind, we address the appellant's asseverational array.

**A**

We start with the appellant's twin claims of procedural error. We treat them separately.

**1**

In his most loudly bruited claim, the appellant submits that the district court imposed the upward variance without sufficient notice. This claim was preserved below and, thus, our

review is for abuse of discretion.  See Medina-Villegas, 700 F.3d at 583.

It is well-established that a sentencing court is not required to give the parties advance notice before imposing an upwardly variant sentence.[2]  See Irizarry v. United States, 553 U.S. 708, 715-16 (2008); United States v. Santini-Santiago, 846 F.3d 487, 489-90 (1st Cir. 2017).  Even so, we have indicated, albeit in dictum, that either advance notice or, upon request, a continuance may be required when the court "propos[es] to adopt a variant sentence relying on some ground or factor that would unfairly surprise competent and reasonably prepared counsel." United States v. Vega-Santiago, 519 F.3d 1, 5 (1st Cir. 2008) (emphasis in original).  The ambit of "unfair surprise," though, is narrow.  There is no unfair surprise either when a variance is premised on "[g]arden variety considerations of culpability, criminal history, likelihood of re-offense, seriousness of the crime, nature of the conduct and so forth" or when a variance is premised on "familiar and undisputed" facts.  Id. at 5-6; see United States v. Politano, 522 F.3d 69, 75 (1st Cir. 2008) (holding

_____

[2] Although Rule 32(h) of the Federal Rules of Criminal Procedure requires "reasonable notice" of an upward departure from the guidelines, this requirement does not apply to variances (as opposed to departures).  See United States v. Daoust, 888 F.3d 571, 575 (1st Cir. 2018); United States v. Santini-Santiago, 846 F.3d 487, 489-90 (1st Cir. 2017).  The parties do not dispute that the sentence imposed in this case comprised an upward variance, not a departure.

that upward variance based on seriousness of crime, need for deterrence, and risk of recidivism did not require advance notice).

In this case, the appellant's claim of unfair surprise dissolves in the acid bath of the record. After all, it is not unfair to charge a party with notice of what is plainly there to be seen. In this case, no advance notice was required for the district court to impose the upward variance.

The appellant's contrary claim boils down to the proposition that the district court sandbagged him because it "had an opportunity to give the parties notice of its intention to vary upwards" but elected not to. But this proposition hinges on the kind of "mechanical notice rule" that we have firmly rejected with respect to the imposition of upward variances. Vega-Santiago, 519 F.3d at 5.

On these facts, it is of no moment that the district court — on the first day of the appellant's sentencing hearing — said nothing about the possibility that it might upwardly vary, continued the hearing to a later date, and said nothing about imposing an upward variance in the three months before the hearing resumed. What counts is that it was readily apparent from the existing record that the ingredients for an upward variance were present. In such a situation, the mere lack of an explicit mention of a possible upward variance should not have caused competent and reasonably well-prepared counsel to believe that an upward

- 11 -

variance was off the table.  See United States v. Daoust, 888 F.3d 571, 576 (1st Cir. 2018) ("Upwardly variant sentences are well-known to be within the universe of possible sentences . . . .").

Here, moreover, the appellant's claim of unfair surprise is undercut by his failure to request a continuance.  See United States v. Mathur, 624 F.3d 498, 508 (1st Cir. 2010) ("[A] defendant's claim of unfair surprise at sentencing is 'severely undermined, if not entirely undone, by his neglect to ask the district court for a continuance to meet the claimed exigency.'" (quoting United States v. Diaz-Villafane, 874 F.2d 43, 47 (1st Cir. 1989))).  The factors on which the district court relied were plainly apparent from the record and — absent willful blindness — the appellant's counsel surely should have realized, no later than the first day of the disposition hearing, that an upward variance was within the realm of possibility.  And if counsel thought that more time was needed to marshal arguments against an upward variance, she should have sought that time from the district court by moving for a continuance.  The failure to make such a motion throws considerable shade on counsel's claim of unfair surprise. We reject this claim.

**2**

The appellant next claims that his sentence was procedurally infirm due to the lack of a "sufficient explanation

to justify the above-guidelines sentence."  Although there is a dispute between the parties as to whether this claim was preserved, we assume — favorably to the appellant — that it was. Consequently, we review the claim for abuse of discretion.  See Medina-Villegas, 700 F.3d at 583.

We start with a bedrock principle:  "a reviewing court must assess the sentencing court's explanation of an upwardly variant sentence in a practical, common-sense manner." Díaz-Lugo, 963 F.3d at 156.  In conducting this assessment, we ask whether the district court's explanation "relies on factors not adequately accounted for" in fashioning the guideline sentencing range, identifies each factor and explains why it calls for an upward variance, and is "commensurate with the extent of the variance." Id.  We are cognizant, however, that the district court may rely on factors already considered in constructing the guideline sentencing range as long as it explains how the guidelines do not "sufficiently account[] for the idiosyncrasies of a particular case."  Id.; see United States v. Del Valle-Rodríguez, 761 F.3d 171, 176-77 (1st Cir. 2014).

The district court's explanation of the appellant's sentence does precisely what our case law requires: it identifies relevant factors justifying an upward variance and explains why the guidelines do not adequately account for each factor, given the idiosyncrasies of the case at hand.  Importantly, the first

- 13 -

factor identified by the district court — the degree of severity of the harm caused to the appellant's victims (that is, sexually based trauma, which made one of his victims suicidal) — is not accounted for either by the sentencing guidelines or by the relevant cyberstalking and extortion statutes. What is more, the degree of severity of the trauma suffered by the appellant's victims is plainly supported by the record: Jane Doe A's victim-impact statement describes in detail how she was humiliated and isolated by the appellant's conduct and how she continued to suffer from fear and anxiety when reminded of his harassment.[3]

So, too, the district court explained how the guidelines failed adequately to account for the other factors upon which it relied: the duration of the harassment, the power dynamics between the appellant and his victims, and the special role of the internet. And the court accompanied that explanation with case-specific details curated from the record. These included the appellant's "continuing 18-month campaign of harassment, intimidation, and extortion against [Jane Doe A]"; the "demeaning,

_____

[3] The appellant argues that the district court's reliance on this factor was improper because "[t]here was no evidence in the record about recent PTSD research or sexually-based trauma." This argument misses the mark. Although the district court's statement of reasons did briefly mention recent research "about the broad spectrum of chronic harm that can result in sexually based trauma," there was no error in this statement. Moreover, the essence of the statement was well-supported by Jane Doe A's victim-impact statement and was a matter of common sense.

- 14 -

misogynistic and callous" nature of his conduct; and his use of "multiple anonymous social media accounts."[4]  Despite the appellant's protestations, none of these specific factors are either inherent in his crimes of conviction or fully accounted for by the guidelines.  And this level of detail was adequate, particularly considering the modest scope of the upward variance (which increased the appellant's sentence by less than fifteen percent).

---

[4] The appellant cites two instances in which he claims the district court overstated the scope of his conduct.  First, he notes that the court at one point stated that the appellant subjected "his victims" to humiliation for "months on end," even though the record shows that he harassed only one victim for many months.  Second, he notes that the court referred at one point to "hundreds of videos and thousands of pictures" that the appellant possessed, to which the government responded that he had "a more limited set of data" than that.

Neither of these examples is sufficient to show that the district court's sentencing decision was based on an erroneous view of the record.  Cf. Fed. Refinance Co. v. Klock, 352 F.3d 16, 28 (1st Cir. 2003) ("We have held before that a reasoned decision should not be vacated merely because a lapsus linguae occurred."); United States v. Zapata, 1 F.3d 46, 47 n.2 (1st Cir. 1993) (disregarding district court's reference to incorrect version of sentencing guidelines as lapsus linguae when court's calculations otherwise tracked correct version). As to the first alleged error, the district court's explanation of its sentence highlighted the fact that the appellant subjected a singular "victim" to an "18-month campaign of harassment, intimidation, and extortion." Thus, we understand the decision to impose an upward variance as predicated on the district court's accurate understanding of the length of time over which the appellant traumatized Jane Doe A specifically.  As to the second alleged error, the exchange identified by the appellant was subsequently corrected by the government.

That ends this aspect of the matter. For these reasons, we disagree with the appellant's assertion that his sentence is tainted by procedural error.

## B

We turn next to the appellant's assault on the substantive reasonableness of his sentence. Our review is for abuse of discretion. See Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020).

"[T]he hallmarks of a substantively reasonable sentence [are] 'a plausible sentencing rationale and a defensible result.'" Díaz-Lugo, 963 F.3d at 157 (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). We have said before that "an adequate explanation for an upward variance and a plausible rationale for that variance are almost always two sides of the same coin." United States v. Valle-Colón, 21 F.4th 44, 50 (1st Cir. 2021). Since we already have concluded that the appellant's sentence was adequately explained, see supra Part II(A)(2), our analysis of substantive reasonableness focuses on the "defensible result" element.

We recognize that "there is no perfect sentence." Del Valle-Rodríguez, 761 F.3d at 177. Thus, we will validate an upwardly variant sentence in the face of a claim of substantive unreasonableness as long as the sentence falls within the "wide universe of supportable sentencing outcomes." Id.

- 16 -

In this case, we conclude that the district court did not abuse its discretion by imposing a forty-two-month sentence. As we have explained, see supra Part II(A)(2), several aspects of the appellant's conduct were particularly egregious and not fully accounted for by the sentencing guidelines. A five-month variance from the top of the guideline sentencing range, when viewed in relation to the nastiness of the appellant's conduct, was neither disproportionate nor undeserved. Seen "in the real-world context of the appellant's actions," Valle-Colón, 21 F.4th at 50, his sentence falls comfortably within the "wide universe of supportable sentencing outcomes," Del Valle-Rodríguez, 761 F.3d at 177.

The appellant demurs. He strives to convince us that his case falls within the mine-run of cyberstalking cases and, thus, that an upward variance is insupportable. See United States v. Rivera-Berríos, 968 F.3d 130, 137 (1st Cir. 2020). We are not persuaded.

To be sure, we previously have acknowledged "that a sentencing court must indicate why the defendant's situation differs from the mine-run of cases when basing an upward variance on a factor already generally accounted for by the [guidelines]." Del Valle-Rodríguez, 761 F.3d at 176. But the appellant is reading the record through rose-colored glasses when he suggests that this is an archetypical cyberstalking case. As is evident from the

- 17 -

record and the district court's thoughtful explanation of the sentence, several aspects of the appellant's conduct were especially egregious. These factors, collectively, distinguish this case from the mine-run of cyberstalking cases. The long duration of Jane Doe A's harassment (eighteen months), the degrading sexual acts that the appellant coerced Jane Doe A into performing, and the fact that the appellant was also convicted of extortion are prime examples. When the real-world context of the appellant's conduct is factored into the mix, the upwardly variant sentence imposed by the district court is "readily defensible." Valle-Colón, 21 F.4th at 50.

Our assessment is unchanged by the appellant's comparison of this case to two cyberstalking cases that he characterizes as mine-run. See United States v. Cardozo, 68 F.4th 725, 730-31 (1st Cir. 2023); United States v. Ackell, 907 F.3d 67, 70-71 (1st Cir. 2018). The substantive reasonableness of a sentence in a given case depends on the factual record before the sentencing court, and the facts of the cases proffered by the appellant are so removed from the facts of the appellant's case that the sentencing outcomes in the proffered cases have no bearing on the outcome here. We explain briefly.

In Ackell, the defendant received a within-the-range sentence of thirty-three months for conduct that, unlike the appellant's, did not involve the solicitation of live sex acts,

more than one victim, or a conviction for extortion. 907 F.3d at 70-71. And in Cardozo, the defendant received a within-the-range sentence of seventy months based on an entirely different guideline range. 68 F.4th at 730-31; see United States v. Cardozo, Nos. 20-1318, 20-1398, 2021 WL 3771818, at *2 (1st Cir. Aug. 25, 2021) (per curiam).

The appellant also compares his case to some of those in which we previously affirmed upwardly variant sentences on what he argues are more flagrant facts. The premise of the argument misses the point. As we have just said, assessment of the substantive reasonableness of a sentence requires close attention to the factual record before the district court. The same degree of attention is required as to other cases said to be comparators, which involve sentences for convictions under various sections of the cyberstalking statute, see 18 U.S.C. § 2261A. An obvious distinction between this case and the cases cited by the appellant is that this case involved not only cyberstalking but also extortion and interstate threats of injury to victims' reputations. And for other reasons, too, the cases that the appellant cites are inapposite: all of them involved larger deviations from the applicable guideline sentencing range and significantly longer sentences. See United States v. Lee, 790 F.3d 12, 16, 19 (1st Cir. 2015) (affirming 100-month sentence above guideline range of fifty-one to sixty-three months); United States

- 19 -

v. <u>Sayer</u>, 748 F.3d 425, 436-37 (1st Cir. 2014) (affirming sixty-month sentence above guideline range of thirty-seven to forty-six months); <u>United States</u> v. <u>Walker</u>, 665 F.3d 212, 232-34 (1st Cir. 2011) (affirming 137-month sentence above guideline range of sixty-three to seventy-eight months).

To say more about the length of the appellant's sentence would be to paint the lily. We hold, without serious question, that the appellant's sentence is substantively reasonable.

**C**

This leaves the appellant's challenge to one of the conditions of his supervised release. That condition, which was recommended by the probation department in the PSI Report and imposed by the district court, reads:

> You are prohibited from being employed in any capacity that may cause you to come in direct contact with children except under circumstances approved in advance by a supervising probation officer. In addition, you must not participate in any volunteer activities that may cause you to come in direct contact with children, except under circumstances approved in advance by the probation officer. Contact is defined as any transaction occurring face to face, over the telephone, via mail, over the Internet, and any third-party communication.

The appellant's counsel objected to this condition at the October 26 sentencing hearing "because the specifics of this case don't deal with minors." The government replied that "while the specific charges in this case do not relate to minors, there

is at least an allegation in the complaint, so on the record, of communications between [the appellant] over Instagram using one of his anonymous accounts and at least one minor female."  At this juncture, the court invited a response, and the appellant's counsel stated:

> I think maybe, then, if we could make it more specific to online contact, rather than the type of restrictions that might relate to just contact out in the public.  With all minors seems overly restrictive given the type of behavior in this case.  So that would be my suggestion.

After the government expressed its unwillingness to accept the proposed modification, the court asked whether the appellant envisioned any particular circumstances in which this condition would pose an issue.  The appellant's counsel rejoined, "I guess I'm just thinking about all the instances where — where there could be inadvertent contact that's not — that wouldn't be of concern based on his prior behavior, which is limited to online behavior."

Before us, the appellant argues that the challenged condition is "overly restrictive and was imposed without adequate explanation or basis" because it rested solely on an allegation in the criminal complaint that he used one of his anonymous social media accounts to send non-sexual messages to a user who had represented herself to him as a fifteen-year-old girl.  The complaint references two messages from this exchange:  one in which

the appellant said that he was "Gary.  That's the real name" and another in which he said that he was a master's student at a "top 5 university."

We agree with the government that the appellant's current argument was not preserved.  Although the appellant initially objected to the challenged condition "because the specifics of this case don't deal with minors," he changed his tune when the government noted his exchange with the fifteen-year-old social media user.  From that point forward, he did not press his objection any further.  Nor did he provide any additional context to indicate that the exchange was more innocent or less probative than depicted by the government.  Instead, the appellant's counsel set off in a different direction, suggesting that the challenged condition should be limited to online contact with minors.  We give this suggestion its plain meaning and regard it as an acknowledgement that some restriction of the appellant's association with minors was appropriate.  Counsel's later comment that the proposed condition could encompass instances of contact "that wouldn't be of concern based on [the appellant's] prior behavior, which is limited to online behavior," buttresses the inference that the appellant was objecting to the challenged condition only to the extent that it reached behavior other than online behavior.

A party cannot preserve a claim of error by switching horses in midstream, that is, by making one claim below and a different claim on appeal. See United States v. Wallace, 461 F.3d 15, 35 n.11 (1st Cir. 2006). Here, the basis of the appellant's claim below differs materially from the basis of his current claim of error. We read the latter as contending that the challenged condition is not justified because the appellant "has never committed a crime involving a minor, there are no allegations that he interacted inappropriately with a minor, and the government did not argue that he posed a danger to children." This is a new claim and, thus, not preserved. See United States v. Hassan-Saleh-Mohamad, 930 F.3d 1, 6 (1st Cir. 2019) ("To preserve a claim of error for appellate review, an objection must be sufficiently specific to call the district court's attention to the asserted error." (quoting United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017))).

Given the disconnect between the claim advanced below and the claim advanced on appeal, our review is for plain error. See id. Plain error review requires "four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Duarte, 246 F.3d at 60. "A party who claims plain error must carry the devoir of persuasion as to all

four of these elements." United States v. Pinkham, 896 F.3d 133, 136-37 (1st Cir. 2018).

There is no cause for us to tarry. The district court may impose a condition of supervised release without an explicit explanation of its rationale so long as the court's reasoning can be deduced from the record. See United States v. Cueto-Núñez, 869 F.3d 31, 40 (1st Cir. 2017). This is such a case. As elucidated in the colloquy concerning the imposition of the condition, the appellant had contacted a minor female using the same account that he had used to prey on women. He boasted to her about being a master's student at a "top 5 university." Given the context of the appellant's crimes, this exchange conveys a risk that he might target children. As such, the justification for the condition restricting contact with children is apparent.

Against this backdrop, we turn to the plain error framework. Our inquiry starts — and ends — at the second step of the framework. We discern no clear or obvious error and, thus, no plain error.

Although the appellant asserts that the challenged condition is unrelated to his offenses of conviction, the sentencing guidelines "do not limit district courts to consideration only of the facts of the crime charged." United States v. Goodwin, 866 F.3d 478, 481 (1st Cir. 2017) (quoting United States v. York, 357 F.3d 14, 19-20 (1st Cir. 2004)); see

United States v. Prochner, 417 F.3d 54, 62-65 (1st Cir. 2005) (upholding supervised release conditions involving sex offender treatment and limiting defendant's contact with minors even though "the record contain[ed] no direct evidence that [the defendant had] engaged in inappropriate conduct with minors"). Instead, the district court may impose any condition of supervised release that bears a reasonable relationship to at least one of "(1) the defendant's offense, history, and characteristics; (2) the need to deter the defendant from further criminal conduct; (3) the need to protect the public from further crimes by the defendant; and (4) the effective educational, vocational, medical, or other correctional treatment of the defendant." York, 356 F.3d at 20.

In this instance, the record makes manifest that the appellant, using one of the same anonymous accounts that he used to harass his victims and seek sexually explicit content, exchanged messages with a social media user who had represented herself as a fifteen-year-old girl. Even though this exchange was not overtly sexual in content, we cannot envision a scenario in which an adult with good judgment about how to interact with children would find it appropriate to reach out to a minor in this context. Relying on this evidence, the district court supportably could have believed that the appellant — if unrestrained — might pose a threat to children and that restricting his interactions with minors in certain settings was reasonably related to the goal of protecting

the public from future crimes at the appellant's hands.  See United States v. Pabon, 819 F.3d 26, 31 (1st Cir. 2016) (explaining that supervised release conditions restricting association with minors "may be proper where the defendant" had committed a sex offense against minors "or where the defendant's conduct otherwise indicates an enhanced risk to minors" (emphasis in original)).

Nor does the challenged condition involve "any greater deprivation of liberty than is reasonably necessary for the purposes of supervised release."  Prochner, 417 F.3d at 64.  As a general matter, we have held that conditions restricting association with minors "are sufficiently circumscribed when they do not place an outright ban on association with minors, but only curtail association, such as by requiring pre-approval by the probation officer or another authority, or by operating in limited contexts."  Pabon, 819 F.3d at 31-32 (internal quotation marks and citations omitted).  The case at hand fits neatly into this paradigm.  The challenged condition operates only in the limited conditions of employment and volunteer work — and only requires the appellant to secure advance approval from a probation officer for such activity if it would put him in direct contact with children.

The cases cited by the appellant are of little help because they involve different factual backgrounds and the conditions challenged there were considerably more sweeping than

the condition at issue here. For example, in United States v. Fey, the defendant was convicted of failing to register as a sex offender under the Sex Offender Registration and Notification Act, 18 U.S.C. § 2250(a). 834 F.3d 1, 2 (1st Cir. 2016). The district court imposed a supervised release condition prohibiting "direct or indirect contact with children under the age of 18, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense, and who has been approved by the [probation office]." Id. at 3. We rejected that condition, concluding that the defendant's prior sex offense was remote (having occurred in 1999) and that the condition was overly broad and unsupported by the record. See id. at 4. Here, by contrast, the condition is limited to particular settings and to direct contact, and the evidence of the appellant's posing potential risk to children is recent.

United States v. Ramos is equally unavailing. 763 F.3d 45 (1st Cir. 2014). There, the defendant, who was "recorded on video engaging in sex acts with a fourteen-year-old girl," was convicted of "aiding and abetting the production of child pornography" in violation of 18 U.S.C. § 2251(a). Id. at 49-50. On appeal, he challenged a condition of supervised release barring "any possession or use, anywhere, of a computer, or of a device with the capability to access the internet" without "prior approval from probation." Id. at 61. We rejected the proposed condition,

in part, because it was too broad "given the importance of the internet to daily life, and the availability of narrowly tailored monitoring tools." See id. at 61-62. We note, moreover, that the condition in Ramos was significantly more restrictive than the condition that is challenged here.

Notably, none of these cases support a conclusion that the challenged condition "flout[s] 'controlling precedent.'" United States v. McCullock, 991 F.3d 313, 322 (1st Cir. 2021) (quoting United States v. Morosco, 822 F.3d 1, 21 (1st Cir. 2016)). The absence of such a showing is a telltale indication that the appellant has failed to identify a clear or obvious error. See United States v. Rabb, 5 F.4th 95, 101 (1st Cir. 2021) (stating that showing of clear or obvious error requires that "a party must show that the error is contrary to existing law"); United States v. Jones, 748 F.3d 64, 69-70 (1st Cir. 2014) (stating that showing of clear or obvious error requires that proponent must show that error is "indisputable"). Discerning no plain error, we reject the appellant's challenge to the disputed supervised release condition.

## III

We need go no further. For the reasons elucidated above, the district court's judgment is

**Affirmed**.

- 28 -