**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1959
_____

UNITED STATES OF AMERICA

v.

ANTWAINE THOMAS,
                              Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 1:19-cr-00283-002
District Judge:  Honorable Joseph H. Rodriguez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on October 31, 2024
_____

Before:  CHAGARES, Chief Judge, PORTER, and CHUNG, Circuit Judges

(Filed: March 28, 2025)
_____

OPINION[*]
_____

CHUNG, Circuit Judge.

Appellant Antwaine Thomas appeals his sentence of 272 months of imprisonment

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

and restitution in the amount of $103,443.97.  We will affirm the judgment of the District

Court as to Thomas's term of imprisonment, but we will vacate as to the District Court's

restitution order due to error in calculating the amount of restitution.

I.      BACKGROUND[1]

On July 30, 2018, Antwaine Thomas and Kareem Moore robbed Fulton Savings

Bank in Carneys Point Township, New Jersey.  Thomas threatened bank employees with

a loaded gun, while Moore forced the employees into the bank's vault and directed them

to load money into a bag.  Thomas pleaded guilty to armed bank robbery and brandishing

a firearm during a crime of violence (bank robbery), in violation of 18 U.S.C. § 2113(d)

and 18 U.S.C. § 924(c)(1)(A)(ii).  In Thomas's plea agreement, the parties stipulated that

his total offense level on Count One would be 31 if he qualified as a career offender.  The

parties also agreed that restitution was mandatory pursuant to 18 U.S.C. § 3663 et seq.

United States Probation issued a draft Presentence Report ("PSR") on February 7,

2020.  Probation determined that Thomas was a career offender because he had been

incarcerated for two qualifying predicate convictions (a 2002 crack-cocaine-related

offense and a 2008 bank robbery) during the fifteen-year lookback period.[2]  With a

criminal history of VI, a total offense level of 31 at Count One, and a seven-year

---

[1]     Because we write for the parties, we recite only facts pertinent to our decision.

[2]     See U.S.S.G. § 4B1.1(a) ("A defendant is a career offender if . . . (3) the defendant
has at least two prior felony convictions of either a crime of violence or a controlled
substance offense"); U.S.S.G. § 4A1.1(a), cmt. n.1 ("A sentence imposed more than
fifteen years prior to the defendant's commencement of the instant offense is not counted
unless the defendant's incarceration extended into this fifteen-year period.").

consecutive mandatory minimum sentence at Count Two, Probation calculated Thomas's total Guidelines range term of imprisonment as 272–319 months. Probation also stated that Thomas owed $103,443.97 in restitution—$20,000 to D.B., an employee of Fulton Savings Bank, and $83,443.97 to PMA Companies ("PMA"), the company that insured Fulton Savings Bank. Thomas did not object by February 21, 2020, the date objections were due, see Fed. R. Crim. P. 32(f)(1) and the final PSR was issued on March 10, 2020.

Approximately fourteen months later, on May 7, 2021, Thomas submitted his Sentencing Memorandum. He did not contest Probation's determination that he was a career offender but he did object to the restitution amount. Thomas argued that "the Government has failed to present any evidence to support the claim of restitution by a preponderance of the evidence." App. 157.

Thomas was sentenced on May 11, 2021, more than a year after the issuance of the final PSR. At sentencing, Thomas's counsel challenged Thomas's career offender status for the first time and informed the District Court that Thomas did not recall being incarcerated on the 2002 offense during the lookback period. He acknowledged, however, that he could not provide evidence to "contradict what the presentence report is indicating." App. 81. Thomas himself then "object[ed] to the whole PS[R,]" App. 85, and argued that (1) the Government had failed to produce records substantiating his prior criminal history, and (2) the PSR incorrectly reported that his 2002 conviction involved crack cocaine rather than marijuana. When the Government did provide evidence of those convictions during the sentencing, Thomas objected that it was too late for that evidence to be introduced. Thomas's lawyer then reiterated that, "[m]y client still does

3

not recall being incarcerated for a violation of parole in 2003," but noted that he "could not produce any documents to present to the Court otherwise" despite his efforts to obtain such documents. App. 100–101. Thomas's lawyer then reiterated his objections to the restitution amount, stating "unfortunately, there was nothing submitted by the Government that substantiates the losses claimed by D.B." App. 108.

The District Court noted that Thomas had "placed his objections on the record" and held that "the qualification for career offender is properly supported in the record by a preponderance of the evidence." App. 101. The District Court then sentenced Thomas to 272 months' imprisonment, five years of supervised release, and, without explanation or analysis, restitution in the amount set forth in the PSR. Thomas now brings this timely appeal.

II.    DISCUSSION[3]

Thomas raises four issues on appeal. First, he challenges the District Court's determination that his 2002 conviction qualifies as a career offender predicate. Second, he asserts that the District Court erred in relying on the PSR's mischaracterization of his drug trafficking offense. Third, he argues that the District Court erred in ordering restitution absent evidence that each restitution recipient suffered compensable losses in the awarded amount. Last, he contends that the District Court erred in failing to explain its decision to award restitution in the awarded amount.[4]

---

[3]    The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[4]    Where a party preserves its objection to the district court's factual findings under the Guidelines or as to a restitution amount, this Court reviews those findings for clear

4

**A. Career Offender Enhancement**

Thomas argues on appeal that his 2002 conviction was not a qualifying career offender predicate because he was not incarcerated on that offense within the fifteen-year lookback period. The transcript of Thomas's sentencing reflects that, while Thomas did inform the District Court that he did not recall being incarcerated on that offense during the lookback period, Thomas did not clearly object to his career offender status on those grounds. Rather, he argued that <u>none</u> of his prior convictions qualified as career offender predicates because the Government had not provided evidence of those convictions.

The Government argues that Thomas forfeited the argument regarding his 2002 conviction because he did not timely object to the PSR, and, as a result, impaired the Government's ability to answer Thomas's objection when he raised it, somewhat indirectly, at sentencing. It is true that Thomas presented this argument within a larger objection regarding the evidence supporting his career offender status, possibly resulting in his forfeiture of this argument. <u>See</u> <u>United States v. Joseph</u>, 730 F.3d 336, 342 (3d Cir.

---

error. <u>United States v. Freeman</u>, 763 F.3d 322, 337 (3d Cir. 2014); <u>United States v. Akande</u>, 200 F.3d 136, 138 (3d Cir. 1999). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>United States v. Douglas</u>, 885 F.3d 145, 150 n.3 (3d Cir. 2018) (quoting United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007)).

Where a party forfeits its objection to a district court's sentencing error by failing to timely raise the objection, we review the district court's findings for "plain error." Fed. R. Crim. Proc. 52(b). Plain error has been committed if we conclude "that there was an error; that the error was plain; that it prejudiced [the appellant's] substantial rights; and that not correcting the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings." <u>United States v. Brito</u>, 979 F.3d 185, 190 (3d Cir. 2020).

2013) (explaining distinction between an issue and an argument); id. at 341

("[A]rguments rather than issues are what parties preserve or waive."); see also Fed. R.

Crim. P. 51(b).[5]

We need not decide whether this was a forfeiture, though, because even under

clear error review, Thomas's argument fails. See United States v. Fountain, 792 F.3d

310, 318 (3d Cir. 2015) (explaining that where an objection is preserved, clear error

review applies). Thomas did not object to the PSR's characterization of his prior

offenses as predicates, nor obtain any documentation supporting his argument, at any

time prior to his sentencing. Without notice of the objection or any reason to further

investigate Thomas's periods of incarceration, the District Court had no reason *not* to rely

on the PSR. United States v. Watkins, 54 F.3d 163, 166–67 (3d Cir. 1995) ("[A]

sentencing court may rely on the facts set forth in the presentence report when their

accuracy is not challenged by the defendant."). At sentencing, Thomas affirmatively

stated that he had no documentation to support his argument other than his own memory.

Considering the above, the District Court's decision to adopt the PSR was neither

"completely devoid of minimum evidentiary support displaying some hue of credibility"

nor without any "rational relationship to the supportive evidentiary data." DiFederico v.

Rolm Co., 201 F.3d 200, 208 (3d Cir. 2000) (explaining the clear error standard). We

---

[5] The Government argues that Thomas waived these arguments when his trial counsel expressly agreed with the Guidelines calculations contained in the PSR. We disagree. As this Court has explained, "[t]o be a waiver, the failure to assert a right must be *intentional*, and the right relinquished must be *known*. Anything less is mere forfeiture." Brito, 979 F.3d at 189. Thomas failed to timely assert his argument at sentencing. That is "forfeiture, not waiver." Id. at 190.

thus conclude that the District Court did not commit clear error in determining, based on the evidence and argument before it,[6] that Thomas's prior convictions were qualifying predicates for career offender purposes.

## B. The PSR's Designation of the 2002 Drug Offense

Thomas fares no better with his argument that his 2002 drug offense involved crack cocaine rather than marijuana. Thomas concedes that he forfeited this argument, so we review for plain error. See Brito, 979 F.3d at 190. To establish that the District Court's alleged plain error affected his substantial rights, see id., Thomas must demonstrate that "against the backdrop of the 'entire record,' there is at least a 'reasonable probability' that the [272-month] sentence was based on the District Court's mistaken belief as to the" identity of the drug involved in his 2002 conviction. See United States v. Payano, 930 F.3d 186, 198 (3d Cir. 2019) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)). Thomas has identified nothing indicating that the District Court's sentencing decision was influenced by the identity of the drug he distributed. The District Court considered many factors in imposing Thomas's sentence, including the seriousness of the offense, the impact on victims, Thomas's stable

---

[6] We recognize that Thomas has introduced, for the first time on appeal, records of his prior convictions that might substantiate his argument that he was not incarcerated for his 2002 conviction within the fifteen-year lookback period. However, the District Court was not privy to such evidence, and we cannot find that the District Court plainly erred by failing to consider arguments and evidence that were not presented to it. Thomas does not argue here, and we do not consider, that the failure to obtain such evidence prior to his sentence constitutes ineffective assistance of counsel. Massaro v. United States, 538 U.S. 500, 504 (2003) (criminal defendants are not required to bring ineffective-assistance-of-counsel claims on direct appeal).

upbringing, Thomas's lengthy criminal record, and the need for both specific and general deterrence. "[A]gainst the backdrop of the 'entire record,'" we cannot conclude there is a "reasonable probability" that that the type of drug involved, rather than the fact of his conviction, affected Thomas's sentence and perceive no plain error. See id.

## C. Restitution Amount

Thomas's third and fourth challenges are to the District Court's determination of the amount of restitution owed by Thomas. We review Thomas's preserved objection for clear error. Akande, 200 F.3d at 138. Thomas argues that the District Court clearly erred when ordering restitution because the amount of restitution was neither supported by a preponderance of the evidence, nor adequately explained.[7] The Government responds that the PSR set forth a sufficient factual basis for restitution in the form of D.B.'s "Declaration of Victim Losses" and PMA's report to the Probation Office on the amounts it paid to bank employees, including D.B. We agree with Thomas that the restitution was not supported by a preponderance of the evidence.

When calculating restitution, "[t]he burden of demonstrating the amount of loss is on the government, and any dispute regarding the proper amount is to be resolved by the preponderance of the evidence." United States v. Vitillo, 490 F.3d 314, 330 (3d Cir. 2007) (citing 18 U.S.C. § 3664(e)). "[N]otwithstanding estimates of loss in a presentence

---

[7] Thomas also argues that the District Court committed clear error in failing to consider Thomas's argument, raised in his Sentencing Memorandum, that the proper restitution amount was $0. Thomas's claim was based predominantly on the erroneous argument that insurance companies cannot be compensated, and the District Court did not clearly err in disregarding this argument.

report, the district judge must point to the evidence in the record supporting the calculation of loss to the victims." United States v. Copple, 24 F.3d 535, 549–50 (3d Cir. 1994); see also United States v. Logar, 975 F.2d 958, 962 (3d Cir. 1992) (where the district court "d[oes] not identify any record support for the loss to those victims," "[i]t follows that remand is necessary.").

Here, there are evidentiary deficiencies underlying the District Court's restitution order. First, D.B. sought $20,000 in restitution "for psychological [harm]" and other costs associated with Thomas's bank robbery. App. 141. While D.B. provided the reasons she incurred costs (liquidating her 401(k), deferring car payments, and developing fear, anxiety, and depression), the record lacks any information relating these costs to the ultimate $20,000 restitution figure. For example, the record does not reflect the amount of penalties incurred from D.B.'s 401(k) cashout, estimates of lost future earnings on the money withdrawn from D.B.'s 401(k), or D.B.'s current and future mental health treatment costs. Compare United States v. Jacobs, 167 F.3d 792, 797 (3d Cir. 1999) (noting evidence relied upon by District Court included detailed medical costs and employment records for time victim was unable to work).

Similarly, the amount paid to victims by PMA lacks details. For instance, there is a difference between the amount PMA says it paid on behalf of D.B. ($26,012.34) and the amount D.B. says she received directly from PMA in "worker's comp" ($12,084.47). App. 141. This discrepancy of approximately $14,000 may be because PMA paid some

9

medical bills directly to providers,[8] but the record lacks supporting documentation for PMA's loss amount. The PSR simply states that PMA paid employees "in connection with the instant offense." PSR ¶ 34. This was insufficient information for the District Court to determine who paid for what[9] and to confirm that PMA's unaccounted-for costs of approximately $14,000 resulted directly from Thomas's criminal conduct. See United States v. Fallon, 470 F.3d 542, 548 (3d Cir. 2006) ("[U]nder the MVRA[,] restitution must be … based upon *losses directly resulting* from the defendant's criminal conduct") (quotation omitted).

Despite these evidentiary issues, the District Court implicitly found the Government met its burden when it adopted the PSR's restitution calculation without analysis or explanation. Given that the only factual finding offered by the District Court is the restitution amount itself, and for the reasons outlined above, we conclude that the District Court clearly erred in adopting the PSR's restitution calculation. Vitillo, 490 F.3d at 330 ("clear error" exists in the restitution context where an appellant shows that

---

[8]     D.B.'s statement implies that PMA paid victims' medical bills and lost wages, including her own.

[9]     To demonstrate, attempts to reverse engineer PMA's $12,084.47 payment to D.B. are stymied by the scarcity of information. D.B. stated that she received $482 bi-weekly from PMA for 49 weeks. If she received 24.5 payments of $482, she would have received $11,809 in total (or $12,050 if she received 25 payments). Neither sum is equivalent to $12,084.47, the amount that PMA claims to have paid her. Perhaps the difference between these two amounts is because PMA also reimbursed D.B., for example, medical co-pays or for some other reimbursable, offense-related cost. The reason does not matter, however; the point is that there was insufficient information for the District Court to make the necessary determinations that Thomas should pay restitution for this portion (as well as the rest) of PMA's costs.

10

the "restitution figure is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data") (quotation omitted); United States v. Cardozo, 68 F.4th 725, 741 (1st Cir. 2023); United States v. Maurya, 25 F.4th 829, 837 (11th Cir. 2022).

Because the District Court's restitution order was not supported by a preponderance of the evidence, and because the District Court provided no explanation or analysis which could nonetheless support its restitution order, we will vacate the restitution portion of the District Court's judgment in this case.

III.     CONCLUSION

For the foregoing reasons, we will VACATE the restitution order; AFFIRM Thomas's sentence in all other respects; and REMAND to the District Court for further proceedings consistent with this opinion.